## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

EVERETT BROPHY AND SHAYLA
CHRISTENSEN,

       Plaintiffs,

vs.                                     No. CIV 07-0751 JB/KBM

ERIC AMENT, DAVID FISK AND JOHN
DOE, Individually, as members of
Lincoln County Auto Brokers, LLC, and
as Ruidoso Police Officers, LINCOLN
COUNTY AUTOBROKERS, LLC,
RAY MERRIT, and THE VILLAGE OF
RUIDOSO ex rel RUIDOSO POLICE
DEPARTMENT, and CITY BANK TEXAS,

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendants Eric Ament, David Fisk, and

Lincoln County Auto Brokers, LLC's Motion to Dismiss and to Refer this Cause of Action to

Arbitration, filed September 6, 2007 (Doc. 5)("Motion to Dismiss").  The Court held a hearing on

June 10, 2008. The primary issues are: (i) whether the Plaintiffs' claims against Lincoln County

Auto Brokers, LLC fall within the scope of the parties' arbitration agreement; and (ii) whether the

arbitration agreement binds the Plaintiffs to arbitrate their claims against Ament and Fisk.  Because

the Court concludes that the Agreement to Arbitrate covers the Plaintiffs' claims against Lincoln

County Auto Brokers, the Court will grant the motion in part, send the claims against Lincoln

County Auto Brokers to arbitration, and dismiss the Complaint against Lincoln County Auto

Brokers.  But because the Plaintiffs, Ament, and Fisk did not agree to arbitrate the claims among

them, the Court will deny the motion to arbitrate the Plaintiffs' claims against Ament and Fisk.

## **FACTUAL BACKGROUND**

Ament, Fisk, and Defendant John Doe are members of the Lincoln County Auto Brokers, and own and manage the company.  <u>See</u> Transmittal of State Court Documents, Exhibit 2, Complaint ¶ 4, at 1 (dated July 2, 2007), filed November 29, 2007 (Doc. 9)("Complaint").  During all relevant times, Defendant Ruidoso Police Department employed Ament and Merrit as police officers.  <u>See id.</u> ¶ 9, at 2.  On or about April 16, 2007, the Plaintiffs purchased a Honda Accord from Lincoln County Auto Brokers, LLC.  <u>See id.</u> ¶ 11, at 2.

On the same day that Brophy and Christensen bought the vehicle, they signed an Agreement to Arbitrate. <u>See</u> Motion to Dismiss, Exhibit A, Agreement to Arbitrate ("Agreement to Arbitrate"). A representative of Lincoln County Auto Brokers also signed the Agreement to Arbitrate.  <u>See id.</u>

The Agreement to Arbitrate calls for binding arbitration for any disputes involving transactions or matters pertaining to the sale of the vehicle to the Plaintiffs.  <u>See id.</u> Specifically, the parties to the Agreement to Arbitrate agreed to binding arbitration as enumerated in the first paragraph of the agreement:

> By entering into this Agreement to Arbitrate ("Agreement"), Customer(s) and Dealership, including any Assignee (collectively referred to as "the Parties") agree, except as otherwise provided in this Agreement, to settle by binding arbitration any dispute between the parties regarding: (1) the purchase/lease by Customer(s) of the above-referenced Vehicle; (2) any products and services purchased in conjunction with the Vehicle; (3) any financing obtained in connection with the transaction; and/or (4) any dispute with respect to the existence, scope or validity of this Agreement.  Matters that the Parties agree to arbitrate include, but are not limited to, disputes related to the Retail Purchase/Retail Lease Agreement and any documents incorporated therein by reference (whether such reference is made in the Agreement or in the document itself), the application for and terms of financing for the transaction, the Finance/Lease Contract, any alleged promises, representations and/or warranties made to or relied upon by the Parties, and any alleged unfair, deceptive, or unconscionable acts or practices.

Agreement to Arbitrate.  Hence, the agreement says the parties agree to arbitrate all disputes related

to the retail purchase agreement regarding: (i) the purchase/lease by the Plaintiffs of the vehicle; (ii) any products and services purchased in conjunction with the vehicle; (iii) any financing obtained in connection with the transaction; and/or (iv) any dispute with respect to the existence, scope or validity of the Agreement to Arbitrate.  See id.  Matters that the parties agree to arbitrate include, but are not limited to, disputes related to the Retail Purchase/Retail Lease Agreement and any documents incorporated therein by reference (whether such reference is in the Agreement to Arbitrate or in the document itself), the application for and terms of financing for the transaction, the Finance/Lease Contract, any alleged promises, representations and/or warranties made to or relied upon by the parties, and any alleged unfair, deceptive, or unconscionable acts or practices. See id.

> The second paragraph of the Agreement to Arbitrate states:
>
> Notwithstanding any other provisions in this Agreement, the Parties agree they are not waiving their right to exercise any self-help or provisional remedy available by law or pursuant to an agreement between them.  Nor is either Party required to arbitrate any individual claim that is filed and properly within the jurisdiction of a small claims court or equivalent state court.  Until a Party entitled to do so requests arbitration, any Party to this Agreement may proceed with such other rights and remedies; provided, however, that neither Party waives the right to request arbitration under this Agreement by exercising other rights and remedies or by initially agreeing to litigate a claim in court.  In addition, if a claim originally brought in a small claims court (or equivalent state court) is transferred or appealed to a higher trial court or if a new claim is asserted after the initial filing of such litigation, the Parties shall have the right to request arbitration under this Agreement.

Id. Thus, the second paragraph of the agreement states that neither party waives the right to arbitration by doing certain things.

The third paragraph states, in relevant part: "This Agreement evidences a transaction involving interstate commerce.  The parties acknowledge and agree that the Federal Arbitration Act (9 U.S.C. § 1 et seq.)("FAA") shall govern any arbitration under the Agreement."  Arbitration

Agreement.  The sixth paragraph states: "The arbitrator(s) shall apply and be bound by governing state and federal law when making the decision and award . . ." Id. The agreement further states that the Parties agree that by entering into this Agreement, "they are waiving their right to a jury trial" and that, "[o]nce one of the Parties has demanded arbitration, binding arbitration is the exclusive method for resolving any and all claims between them." Id.

The parties, in entering into the Agreement to Arbitrate, signed the Agreement which in bold print, stated:

> BY SIGNING BELOW, CUSTOMER ACKNOWLEDGES THAT HE OR SHE HAS READ THIS AGREEMENT TO ARBITRATE AND AGREES TO BE BOUND BY THE TERMS AND CONDITIONS OF THIS AGREEMENT.  THIS AGREEMENT IS INCORPORATED BY REFERENCE INTO THE RETAIL PURCHASE/RETAIL LEASE AGREEMENT.  IT MAY NOT BE MODIFIED OR AMENDED EXCEPT BY A SEPARATE WRITTEN AGREEMENT SIGNED BY CUSTOMER(S) AND AN AUTHORIZED DEALERS REPRESENTATIVE.

Id.

The vehicle that the Plaintiffs purchased proved to be defective within a week of its purchase. See id. ¶ 15, at 2.  Upon notice that the car needed repairs, the "sellers" refused to repair the vehicle until the entire down payment was paid in full.  Id. ¶ 16, at 2.  Ament threatened to arrest Plaintiff Everett Brophy for failing to pay.  See id. ¶ 17, at 2.

The parties came to an oral agreement that, if the Plaintiffs made a payment of $600.00, the car would be repaired.  See id. ¶ 18, at 3.  The Plaintiffs allege that Plaintiff Shayla Christensen drove the vehicle to Lincoln County Auto Brokers to make a partial payment and told the Defendants that Brophy would come by after work to pay the remaining balance.  See id. ¶ 19, at 3.  According to the Plaintiffs, the Defendants took Christensen into an office and refused to allow her to leave until they had the car down payment in full. See id. ¶ 20, at 3.

-4-

The Plaintiffs state that Christensen called 911, asked for an officer, and was told that one was already on the way.  See id.  ¶ 21, at 3.  The Ruidoso Police Department sent Defendant Ray Merritt to the scene.  See id. ¶ 22, at 3.  The Plaintiffs contend that Merrit and the other Defendants verbally abused Christensen.  See id.  ¶ 24, at 3.

The Plaintiffs allege that Ament threatened to arrest Christensen if she did not remove her personal property from the vehicle.  See id.  ¶ 27, at 3.  Christensen complied.  See id.  ¶ 29, at 4.  Brophy arrived, and he and Christensen were ushered off the property without their vehicle.  See id. ¶ 30, at 4.

Brophy and Christensen allege that they immediately went to the police department to report the incident, but were told they were unable to file a report and were only able to file a civilian complaint.  See id.  ¶ ¶ 32, 33, at 4.  At the time of these events, no written notice of default or repossession had been served on Brophy or Christensen.  See id.  ¶ 35, at 4.

On or about June 22, 2007, Brophy and Christensen saw their vehicle parked outside of a car repair shop in Ruidoso, New Mexico.  See id.  ¶ 37, at 4.  According to the Plaintiffs, they stopped to take pictures of the vehicle to show that others were driving their vehicle.  See id.  ¶ 38, at 4.  The Plaintiffs allege that, because the sun prevented photographing the vehicle identification number through the windshield, Brophy opened the door to take the photograph.  See id.  ¶ 39, at 4.  The Plaintiffs allege that Ament and Merrit immediately appeared and, pulled Brophy's parents over in their vehicle.  See id.  ¶ ¶ 40, 41, at 5.  Ament accused Brophy's parents of attempting to steal the vehicle and demanded to know their association with the Plaintiffs.  See ¶ 40, at 5.  Ament threatened to have Brophy arrested for attempting to steal a vehicle.  See id. The Plaintiffs remain in debt to City Bank, Texas for the repossessed vehicle.  See id.  ¶ 42, at 5.

## PROCEDURAL BACKGROUND

The Plaintiffs have filed this case against, among others, Ament, Fisk, and Lincoln County Auto Brokers.  See Complaint.  The Plaintiffs' Complaint, among other things, lists eighteen counts, several of which are actionable under 42 U.S.C. § 1983, because the conduct allegedly occurred while the Defendants were acting under color of state law.  See Complaint at 6-7.  Specifically, the Plaintiffs list twelve torts they claim were committed by the Defendants, as well as violations of the New Mexico Uniform Commercial Code, New Mexico Motor Vehicle Quality Assurance Act, Truth in Lending Act, New Mexico Unfair Practices Act, Fair Debt Collection Practices Act, and 42 U.S.C. § 1983.  See Complaint at 6-7.  The Plaintiffs also allege that the Defendants have violated the Plaintiffs' civil rights to freedom from seizure of property without due process of law.  See id. at 6.

Ament, Merritt, and Defendant Village of Ruidoso ex rel Ruidoso Police Department, not the Plaintiffs, removed the case to federal court.  See Notice of Removal, filed August 6, 2007 (Doc. 1)("Notice of Removal").  Ament, Fisk, and Lincoln County Auto Brokers move the Court to refer or "remand" the case against them to arbitration pursuant to the Agreement to Arbitrate this dispute, and to dismiss the case against them with prejudice.  Motion to Dismiss at 2. Ament, Fisk, and Lincoln County Auto Brokers attach to their motion a copy of the Agreement to Arbitrate and incorporate the Agreement into their motion.  See Agreement to Arbitrate.

At the time that Ament, Fisk, and Lincoln County Auto Brokers filed their motion, they were unable to get concurrence from the Plaintiffs' counsel.  See Motion to Dismiss at 2.  On May 15, 2008, the Plaintiffs filed a response to Defendants' Motion to Dismiss.  See Response to Motion to Dismiss and Refer to Arbitration, filed May 15, 2008 (Doc. 14)("Response"). In their response, the

Plaintiffs ask the Court to deny the motion. See id. at 3. The Court has not held a case-management conference under rule 16.

At the June 10, 2008 hearing, the attorney for Ament, Fisk and Lincoln County Auto Brokers stated that his clients' position was that all claims should be dismissed and sent to arbitration.  He also proposed, however, an alternative option of sending all matters pertaining to the vehicle to arbitration and then litigating the remaining alleged conduct.  See Transcript of Hearing at 10:24-11:17 (taken June 10, 2008)("Tr.")(Danoff).[1]  Specifically, the attorney for Ament, Fisk and Lincoln County Auto Brokers explained:

> [W]e're saying all matters pertaining to the vehicle should go to arbitration relative to . . . alleged defectiveness[,] quality assurance act, Unfair Trade Practices Act. There is nothing that shows here that they did anything individually on that.  They go to lengths to plead about what they did individually in the alleged tort[ious] conduct, but I don't think they get to the point we're discussing here relative to their acts . . . . I see all items with regard to the vehicle being arbitrated and this Court hearing the civil rights portion."

Tr. at 10:24-11:17, 14:11-13 (Danoff).  The attorney for the Ruidoso Police department stated:

> [I]t seem[s] to me that the issues that appear to be fairly arbitrable . . . are those that do relate to the sale of the vehicle[,] the conditions of the vehicle, whether the vehicle was defective in any way shape or form. . . . . I've been focusing on issues relating to the alleged conduct of Officer Ament and Officer Merrit in connection with their position as members of the Ruidoso Police Department and I've always thought that those issues, which are Section 1983 issues and ancillary issues under the New Mexico Tort Claims Act, probably are not susceptible to arbitration.

Tr. at 16:20-17:7 (Olsen).  The Defendants' counsel disagreed regarding whether all claims against all three defendants should be sent to arbitration.  See id. at 19:5-25 (Court, Danoff & Olsen).  While the counsel for Lincoln County Auto Brokers, Fisk, and Ament thought that all claims should be

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

arbitrated, the counsel for the Ruidoso Police Department stated that sending all claims, including those related to the conduct of the police officers as officers, would cause duplicate discovery and litigation.  See id. at 19:5-25 (Court, Danoff & Olsen).

At the hearing, the attorney for the Plaintiffs stated:

My first concern your Honor, is particularly as a plaintiffs attorney and plaintiffs in this case, that we not be placed to the . . . additional burden of duplicative litigation that we essentially do discovery and other things in one case that is necessarily going to be included in the other.  I don't see how you can do anything in the civil rights portion of the case that's not going to fall very heavily and be very fact-dependant on the issues that have to do with the car related litigation . . . My second concern . . . is that my clients have their day in . . . a federal court before a jury on the civil rights claims.  The Constitutional claims.  I don't think there was ever an intention on the part of the plaintiffs or even on the defendants when they drafted this or when they adopted this particular document, that they were going to have a police officer who moon lights as a car dealer and goes over and threatens a customer in their police uniform . . . . And although my preference is . . . that it all be done together in one . . . I feel very strongly that my clients on the federal claims should have their day in federal court in front of a jury and they in no way agreed to waive violations of their constitutional rights by virtue of this contract.

Id. at 21:18-22:15 (Beauvais).  Furthermore, the Plaintiffs counsel stated that he intended to bring a § 1983 claim against Lincoln County Auto Brokers by bootstrapping them into acting under color of law as a private citizen.  See Tr. at 25:7-15 (Court & Beauvais).

## LAW REGARDING COMPELLING ADHERENCE TO AN ARBITRATION AGREEMENT

Both federal and state law embody a strong national and state policy in favor of arbitration. "[A]s a general rule courts, rather than arbitrators, determine issues of substantive arbitrability." Carpenters Dist. Council of Denver and Vicinity v. Brady Corp., 513 F.2d 1, 3 (10th Cir. 1975)(internal quotation marks and citations omitted). The Court need only decide whether there is an enforceable agreement to arbitrate; once it so finds, it must order the parties to arbitrate.

-8-

1.      **Federal Law.**

The Federal Arbitration Act ("FAA") governs motions to compel arbitration involving contracts related to commerce.  See 9 U.S.C. §§ 1-307.  Section 2 of the Act provides that an agreement, in writing, to submit a controversy arising out of a contract to arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  If a party is aggrieved by the refusal of another to arbitrate under a written agreement, the court, upon petition, "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.

"In 1925, Congress enacted the FAA with the express purpose of granting arbitration agreements the same enforceability as any other contract provision.  Congress designed the FAA to 'overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and place such agreements upon the same footing as other contracts.'"  Thompson v. Casa Arena Blanca, No. CV 05-01331 JB, Memorandum Opinion and Order at 6, filed September 12, 2006 (Doc. 16)("Thompson Memorandum Opinion and Order")(quoting Volt Info. Sciences, Inc. v. Bd. of Trs., 489 U.S. 468, 474 (1989)(internal citation omitted)).  The Supreme Court of the United States has echoed Congress and acknowledged that the FAA reflects a strong public policy in favor of arbitration, especially where there is an agreement by both parties to arbitrate any controversies.  See Southland Corporation v. Keating, 465 U.S. 1, 10 (1984)("Congress declared a national policy favoring arbitration.").

Federal courts have been unambiguous on this issue, stating that written instruments

pertaining to mandatory arbitration are not only enforceable, but are favored.  Indeed, the Supreme

Court has construed the FAA to leave "no place for the exercise of discretion by a district court, but

instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to

which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213,

218 (1985).  When the applicability of arbitration is in dispute, "'as a matter of federal law, any

doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'"

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985)(quoting Moses

H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)).

## ARBITRATION OF FEDERAL STATUTORY CLAIMS

In Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974), the Supreme Court of the United

States addressed an action under Title VII of the Civil Rights Act of 1964 brought by an employee

who had unsuccessfully claimed, in an arbitration proceeding, that his discharge was racially

motivated. See id. at 39-42. Although Alexander protested the same discharge in the Title VII action,

the Supreme Court found that his Title VII claim was not foreclosed by the arbitral decision against

him. See id. at 51-52.  Additionally, the Supreme Court declined to adopt a rule that would have

required federal courts to defer to an arbitrator's decision on a discrimination claim when: (i) the

claim was before the arbitrator; (ii) the collective-bargaining agreement prohibited the form of

discrimination charged in the suit under Title VII; and (iii) the arbitrator has authority to rule on the

claim and to fashion a remedy. See id. at 55-56.

Ten years later, in McDonald v. City of West Branch, Michigan, 466 U.S. 284 (1984), the

Supreme Court addressed a similar question whether a federal court may accord preclusive effect

to an unappealed arbitration award in a case brought under 42 U.S.C. § 1983.  See McDonald v. City

of West Branch, Mich., 466 U.S. at 285.  McDonald, a former West Branch, Michigan, police officer, was discharged and filed a grievance pursuant to the collective-bargaining agreement between West Branch and the United Steelworkers of America, contending that there was no proper cause for his discharge, and that, as a result, the discharge violated the collective-bargaining agreement.  See id. at 285-86.  After the preliminary steps in the contractual grievance procedure had been exhausted, the grievance was taken to arbitration. See id. at 286. The arbitrator ruled against McDonald, however, finding that there was just cause for his discharge.  See id.  McDonald did not appeal the arbitrator's decision and filed a § 1983 action against the City of West Branch and some of its officials.  See id.   In his complaint, McDonald alleged that he was discharged for exercising his First-Amendment rights of freedom of speech, freedom of association, and freedom to petition the government for redress of grievances.  See id. The case was tried by a jury which returned a verdict against one defendant, but in favor of the remaining defendants.  See id. On appeal, the United States Court of Appeals for the Sixth Circuit reversed the judgment against the defendant and reasoned that the parties had agreed to settle their disputes through the arbitration process and that the arbitrator had properly considered the reasons for McDonald's discharge.  See id. at 286-87.  The Sixth Circuit found that the arbitration process was proper and that McDonald's First-Amendment claims were barred by res judicata and collateral estoppel.  See id. at 287.

The Supreme Court held in McDonald v. City of West Branch, Michigan that, "[b]ecause § 1983 creates a cause of action, there is, of course, no question that Congress intended it to be judicially enforceable . . . . The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights -- to protect the people from unconstitutional action under color of state law." McDonald v. City of West Branch, Mich., 466 U.S.

at 290. The Supreme Court further stated:

> And, although arbitration is well suited to resolving contractual disputes, our decisions in <u>Barrentine</u> and <u>Gardner-Denver</u> compel the conclusion that it cannot provide an adequate substitute for a judicial proceeding in protecting the federal statutory and constitutional rights that § 1983 is designed to safeguard. As a result, according preclusive effect to an arbitration award in a subsequent § 1983 action would undermine that statute's efficacy in protecting federal rights.

<u>Id.</u> The Supreme Court gave the following reasons for its decision: (i) an arbitrator's expertise may not be that which is required to resolve the complex legal questions that arise in 1983 actions; (ii) because an arbitrator's authority derives solely from the contract, an arbitrator may not have the authority to enforce § 1983; (iii) because the union usually has exclusive control over the manner and extent to which an individual grievance is presented arbitration is an inadequate substitute for judicial proceedings;  and (iv) arbitral factfinding is generally not equivalent to judicial factfinding.

<u>See</u> <u>McDonald v. City of West Branch, Mich.</u>, 466 U.S. at 290-91.  The Supreme Court thus held

> that in a § 1983 action, an arbitration proceeding cannot provide an adequate substitute for a judicial trial.  Consequently, according preclusive effect to arbitration awards in § 1983 actions would severely undermine the protection of federal rights that the statute is designed to provide.  We therefore hold that in a § 1983 action, a federal court should not afford res judicata or collateral-estoppel to effect an award in an arbitration proceeding brought pursuant to the terms of a collective-bargaining agreement.

<u>Id.</u> at 292.

In more recent cases, the Supreme Court has made a different determination regarding the arbitrability of other federal statutes.  <u>See</u> <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20 (1991);  <u>Rodriguez de Quijas v. Shearson/American Express, Inc.</u>, 490 U.S. 477 (1989); <u>Shearson/American Express Inc. v. McMahon</u>, 482 U.S. 220 (1987); <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614 (1985).  In  <u>Gilmer v. Interstate/Johnson Lane Corporation</u>, the Supreme Court stated that "[i]t is by now clear that statutory claims may be the

subject of an arbitration agreement, enforceable pursuant to the [Federal Arbitration Act]." 500 U.S. at 26.  The Supreme Court has held enforceable "arbitration agreements relating to claims arising under the  Sherman Act, 15 U.S.C. §§ 1-7; § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); the civil provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq.; and § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77 l(2)." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. at  26 (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. at 614; Shearson/American Express Inc. v. McMahon, 482 U.S. at 220; Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. at 477).  The Supreme Court stated in Gilmer v. Interstate/Johnson Lane Corp., that "[i]n these cases we recognized that '[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.'" Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. at  26 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. at 628). The Supreme Court in Gilmer v. Interstate/Johnson Lane Corp. further stated that, "[a]lthough all statutory claims may not be appropriate for arbitration, [h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. at  26 (internal quotation marks and citations omitted).  The Supreme Court went on to note that the burden "is on [the Plaintiff] to show that Congress intended to preclude a waiver of a judicial forum for [particular statutory] claims." Id. (citing Shearson/American Exp., Inc. v. McMahon, 482 U.S. 220 at 227 (1987)(stating "[t]he burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue.")).  The Supreme Court in Gilmer v.

Interstate/Johnson Lane Corp., stated that, "[i]f such an intention exists, it will be discoverable in the text of the [relevant statute], its legislative history, or an inherent conflict between arbitration and the [relevant statute]'s underlying purposes." Id. (internal quotation marks and citations omitted). "Throughout such an inquiry, it should be kept in mind that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Id. (internal quotation marks and citations omitted).

**2.  New Mexico Law.**

"The Uniform Arbitration Act ("UAA") provides that an agreement to submit any controversy arising between the parties to arbitration is 'valid, enforceable and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract.'" Thompson Memorandum Opinion and Order at 7 (quoting N.M.S.A. 1978, § 44-7A-7(a)). If the court finds that there is an enforceable agreement to arbitrate, it shall order the parties to arbitrate. See N.M.S.A. 1978, § 44-7A-8(a). "Where the provision for arbitration is disputed, the court's function is to determine whether there is an agreement to arbitrate and to order arbitration where an agreement is found." Thompson Memorandum Opinion and Order at 7-8 (citing N.M.S.A. 1978 § 44-7A-7(a)). "Similar to the federal courts' interpretation of the FAA, courts in New Mexico have viewed the UAA as an expression of a public policy favoring arbitration." Thompson Memorandum Opinion and Order at 8 (citing United Tech. & Res., Inc. v. Dar Al Islam, 115 N.M. 1, 3, 846 P.2d 307, 309 (1993))("The legislature and the courts of New Mexico have expressed a strong policy preference for resolution of disputes by arbitration.")(internal quotation marks omitted). More specifically, New Mexico courts have construed the legislative purpose of the act as an attempt to reduce the caseload of the courts. See Bd. of Educ. Taos Mun. Sch. v. Architects, Taos, 103 N.M.

462, 463, 709 P.2d 184,186 (1985)("A concern for preserving scarce judicial resources lies at the heart of the preference for arbitration."); Dairyland Ins. Co. v. Rose, 92 N.M. 527, 531, 591 P.2d 281, 285 (1979).  "In New Mexico, when the court finds that an arbitration agreement exists, then, in accordance with the UAA, the court has a duty to enforce the provisions of the agreement and order adherence to that arbitration agreement." Thompson Memorandum Opinion and Order at 8 (citing Bernalillo County Med. Ctr. Employee's Ass'n Local 2370 v. Cancelosi, 92 N.M. 307, 308, 587 P.2d 960, 961 (1978)).

Consistent with this understanding, the Supreme Court of New Mexico has interpreted the UAA to limit the court's role to determining if an arbitration agreement exists and, if so, to order the parties to arbitration.

> When a broad and general arbitration clause is used, as in this case, the court would be very reluctant to interpose itself between the parties and the arbitration which they have agreed upon. When the parties agree to arbitrate any potential claims or disputes arising out of their relationships by contract or otherwise, the arbitration agreement will be given broad interpretation unless the parties themselves limit arbitration to specific areas or matters. Barring such limiting language, the courts only decide the threshold question of whether there is an agreement to arbitrate. If so, the court should order arbitration. If not, arbitration should be refused.

K.L. House Constr. Co. v. City of Albuquerque, 91 N.M. 492, 494, 576 P.2d 752, 754 (1978).  In New Mexico, parties entering a contract providing for the resolution of disputes through arbitration are bound by their agreement to arbitrate.  See Christmas v. Cimarron Realty Co., 98 N.M. 330, 332, 648 P.2d 788, 790 (1982).

In Fiser v. Dell Computer Corporation, 2007-NMCA-087, 165 P.3d 328, Fiser ordered a Dell computer from Dell's website and, after receiving the computer, filed a putative class action suit alleging that Dell's website contained misrepresentations and omissions about the amount of storage capacity on its computers.  See id. ¶ 2, 165 P.3d at 334.  Dell moved to stay the district court action

and to compel arbitration of Fiser's claims, alleging that Dell and Fiser had agreed to arbitrate based on the arbitration provision contained in the written terms and conditions that accompanied the purchase of Fiser's computer.  See id. ¶ 3, 165 P.3d at 334. The terms and conditions, including the arbitration provision, were set forth as hyperlinks on the website that Fisher used to order the computer, in a confirmation e-mail sent to Fiser after his purchase, and in a written copy shipped with the computer.  See id.  Fiser opposed arbitration, contending that he never agreed to arbitrate, and that the arbitration provision contained in the terms and conditions was unconstitutional and/or unconscionable.  See id.  The case came before the New Mexico Court of Appeals on an interlocutory appeal of the order remanding the case to arbitration.  See id. ¶ 4, 165 P.3d at 334.  The New Mexico Court of Appeals decided that the district court must determine whether an agreement to arbitrate is valid and state contract law governs that issue.  See id. ¶ 5, 165 P.3d at 334. The New Mexico Court of Appeals held that Fiser agreed to arbitrate and noted that a consumer who purchases goods, is informed of the contractual terms when the product is delivered, and is given a specified number of days in which to return the product, is deemed to have accepted the terms unless the product is returned within the specified time period.  See id. ¶ 22, 165 P.3d at 338 (citing Hill v. Gateway 2000, Inc., 105 F.3d 1147, 1149 (7th Cir. 1997)).  The New Mexico Court of Appeals also noted that such "approve-or-return contracts" are enforceable in almost all jurisdictions that have considered the issue.  Fiser v. Dell Computer Corporation, 2007-NMCA-087, ¶ 22, 165 P.3d at 338.  The New Mexico Court of Appeals held that the plaintiff failed to reject the terms of the arbitration agreement when he failed to return the computer within thirty days and that the arbitration provision was enforceable.  See id. ¶¶ 30, 56, 165 P.3d at 340, 345.

3.      **Existence of a Valid Arbitration Agreement.**

The Supreme Court of the United States has noted that "[a]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes – but only those disputes – that the parties have agreed to submit to arbitration." First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 943 (1995)(internal citations omitted).  As the United States Court of Appeals for the Tenth Circuit has noted, "[t]he presumption in favor of arbitration . . . disappears when the parties dispute the existence of a valid arbitration agreement." Dumais v. Am. Golf Corp., 299 F.3d 1216, 1220 (10th Cir. 2002)("Dumais II").  The Court of Appeals of New Mexico has reached a similar conclusion: "[U]nder either the FAA or the [state Act], a legally enforceable contract is a prerequisite to arbitration; without such a contract, parties will not be forced to arbitrate." Heye v. Am. Golf Corp. Inc., 2003-NMCA-138 ¶ 8, 80 P.3d 495, 498 (citing First Options of Chi., Inc. v. Kaplan, 514 U.S. at 944-45).  In the Tenth Circuit and in the courts of New Mexico, the "existence of an agreement to arbitrate is a threshold matter which must be established before the [the arbitration statutes] can be invoked." Avedon Eng'g, Inc. v. Seatex, 126 F.3d 1279, 1287 (10th Cir. 1997).  See K.L. House Constr. Co. v. City of Albuquerque, 91 N.M. at 494, 576 P.2d at 754 (describing whether there is an agreement to arbitrate as a "threshold question").

"In determining whether the parties agreed to arbitrate a matter, the court should apply state-law principles regarding the formation of contracts." Thompson Memorandum Opinion and Order at 9 (citing First Options of Chi., Inc. v. Kaplan, 514 U.S. at 944; Avedon Eng'g, Inc. v. Seatex, 126 F.3d at 1287).  It is a fundamental tenet of contract law "that each party to a contract has a duty to read and familiarize himself with the contents of the contract, each party generally is presumed to know the terms of the agreement, and each is ordinarily bound thereby." Ballard v. Chavez, 117

-17-

N.M. 1, 3, 868 P.2d 646, 648 (1994).  Under New Mexico law, "[a] legally enforceable contract requires evidence supporting the existence of 'an offer, an acceptance, consideration, and mutual assent.'" Piano v. Premier Distrib. Co., 2005-NMCA-018, ¶ 6, 107 P.3d at 14 (quoting Heye v. Am. Golf. Corp., 2003-NMCA-139, ¶ 9, 80 P.3d at 498).

"Consideration is a promise to do something that a party is under no obligation to do or to forbear from doing something it has a legal right to do." Thompson Memorandum Opinion and Order at 9 (citing Talbott v. Roswell Hosp. Corp., 2005-NMCA-109, ¶ 16, 118 P.3d 194, 198).  A valid contract must be mutually obligatory, i.e. both sides must provide consideration. See Heye v. Am. Golf Corp., 2003-NMCA-138, ¶ 12, 80 P.3d at 499.  Thus, a promise must be associated with a corresponding obligation; a promise without an obligation "in reality, promises nothing– it is illusory, and it is not consideration." Id.

In Dumais v. American Golf Corp., 150 F.Supp.2d 1182 (D.N.M. 2001)(Vazquez, J.[2]), the United States District Court for the District of New Mexico was asked to determine if an arbitration provision contained in an employment handbook was enforceable, and precluded an employee from bringing a claim for sexual harassment and constructive discharge under Title VII of the Civil Rights Act of 1964 against her employer.  See id. at 1189-90.  The employer suggested that two documents the employee executed when she became an employee constituted a valid agreement to arbitrate such disputes.  See id.  The documents included: (i) a form acknowledging that the employee had read and would abide by the employer's arbitration program -- the "We Can Work It Out" program; and (ii) an acknowledgment form that she would comply with the employment handbook and the

---

[2]The Honorable Martha Vazquez is now Chief United States District Judge for the District of New Mexico.

"We Can Work It Out" program. Id. at 1192-93.

Judge Vazquez, in Dumais v. American Golf Corp., found the arbitration agreement embodied in the "We Can Work It Out" program to be illusory, because it was executed over two months after the employee began her employment. Id. at 1192-93.  The agreement modified the terms of employment -- it divested  the employee's right to have disputes heard in an Article III court -- without consideration in return for that divestiture.  See id.  Judge Vazquez noted that,  in the particular agreement at issue, inconsistent provisions in the employment agreement made it unclear whether the arbitration agreement was binding on the employer, and therefore the potentially unilateral character of the promise to arbitrate made it illusory. See id.

Judge Vazquez limited her holding, however, by acknowledging that, under New Mexico law, an arbitration agreement was not necessarily invalid simply because it contained terms that favored one party over another.  See id. at 1191-92.  For an unbalanced agreement to be invalid, the terms of the agreement must be unconscionable.  See id. at 1192.  Judge Vazquez commented that modifications in scheduling and compensation may be economic necessities of doing business, but an alteration in an arbitration agreement required the employee to "surrender[ rights] . . . far more important than those  associated with mere conditions of employment."  Id. at 1193-94.

The Tenth Circuit affirmed Judge Vazquez' holding in a de novo appeal.  See Dumais II. In so doing, the Tenth Circuit stated: "We join other circuits in holding that an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory."  Id. at 1219 (citing decisions of the Fourth, Sixth, and Seventh Circuits).

In Heye v. American Golf Corporation, 2003-NMCA-138, 80 P.3d 495, the New Mexico Court of Appeals considered a question similar to the one that the federal court addressed in Dumais

v. American Golf Corp.  The New Mexico Court of Appeals assessed the validity of an arbitration agreement in an employment contract that bound the employee, but not the employer, to arbitrate and that the employee signed after she was hired.  See 2003-NMCA-138, ¶¶ 2,3, 80 P.3d at 496-97. In finding that the agreement was illusory, the New Mexico Court of Appeals noted that the agreement permitted the employer to "amend, supplement, rescind or revise the policy regarding arbitration at its whim."  Id. ¶ 13, 80 P.3d at 499.  Although the employee was bound to arbitrate, the employer "remain[ed] free to selectively abide by its promise to arbitrate" and therefore the employer's "promise to arbitrate [did] not provide the consideration necessary to enforce the arbitration agreement."  Id. ¶ 15, 80 P.3d at 500.

Nevertheless, when New Mexico courts have found arbitration agreements to be valid, they have been given broad application.  In K.L. House Construction Co. v. City of Albuquerque, the Supreme Court of New Mexico held that a valid arbitration clause existed and that the parties were compelled to arbitrate all disputes when the "subject matter of the dispute has a reasonable relationship to the subject matter of the contract."  91 N.M. at 494, 576 P.2d at 754.

> When a broad and general arbitration clause is used . . . the court should be very reluctant to interpose itself between the parties and the arbitration which they have agreed upon. When the parties agree to arbitrate any potential claims or disputes arising out of their relationships by contract or otherwise, the arbitration agreement will be given broad interpretation unless the parties themselves limit arbitration to specific areas or matters. Barring such limiting language, the courts only decide the threshold question of whether there is an agreement to arbitrate.

91 N.M. at 494, 576 P.2d at 754. Finally, an arbitration clause does not require consideration independent from the consideration that sustains the contract as a whole.  See Barker v. Golf U.S.A., Inc., 154 F.3d 788, 792 (8th Cir. 1998)("[M]utuality of obligation is not required for arbitration clauses so long as the contract as a whole is supported by consideration.").

4.      **Federal Court Action.**

The FAA provides that "[a] party aggrieved by the alleged failure . . . or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in a manner provided for in such agreement." 9 U.S.C. § 4.  Upon a finding that a matter is referable to arbitration, the FAA also indicates that the district court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."   9 U.S.C. § 3. Notwithstanding the terms of 9 U.S.C. § 3, however, several United States Courts of Appeal have concluded that "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."  Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001).  See Green v. Ameritech Corp., 200 F.3d 967, 973 (6th Cir. 2000)("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."); Bercovitch v. Baldwin Sch., Inc., 133 F.3d 141, 156 n.21 (1st Cir. 1998); Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992); Sparling v. Hoffman Constr. Co., 864 F.2d 635, 638 (9th Cir. 1988).

"The Tenth Circuit has cautioned that, when one of the parties petitions the court to stay an action pending compulsory arbitration, the mandatory language of 9 U.S.C. § 3 is binding, and it is error for the court to dismiss the action." Thompson Memorandum Opinion and Order at 14 (citing Adair Bus Sales, Inc. v. Blue Bird Corp., 25 F.3d 953, 955 (10th Cir. 1994)).  When, however, the party seeking to compel arbitration requests the court for dismissal, and there is no evidence in the record of any party requesting a stay, it is not error for the district court to dismiss the case.  See Armijo v. Prudential Ins. Co. of Am., 72 F.3d 793, 797 (10th Cir. 1995).

"While a party may not be compelled to submit a dispute to arbitration unless it has agreed to do so, federal arbitration policy requires that "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" Altresco Philippines, Inc. v. CMS Generation Co., 111 F.3d 140, 141 (10th Cir. 1997)(quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. at 24-25). "Indeed, arbitration should be compelled 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Altresco Philippines, Inc. v. CMS Generation Co., 111 F.3d at 141 (quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960)). Any claim that has a "reasonable factual connection to the [arbitration] contract" is arbitrable. Coors Brewing Co. v. Molson Breweries, 51 F.3d 1511, 1516 (10th Cir. 1995). However, "[a]n arbitration clause 'does not extend to all disputes of any sort . . . but only to disputes touching specified provisions of the agreement.'" Id. at 1516 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 723 F.2d 155, 159 (1st Cir. 1983), aff'd in part and rev'd in part, 473 U.S. 614).

**5.     Equity and Unequal Bargaining Power.**

The FAA and the state arbitration act contemplate that the "written agreement to arbitrate in any contract involving interstate commerce . . . 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" Volt Info. Sciences, Inc. v. Bd. of Trs., 489 U.S. at 474 (quoting 9 U.S.C. § 2); Murken v. Deutsche Morgan Grenfell, Inc., 2006-NMCA-080, ¶ 30, 139 P.3d 864, 855 (noting the UAA states "that an agreement to arbitrate is 'valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract'"). "In considering whether a court should enforce a contract or a provision in a contract, the Supreme Court of New Mexico has suggested that the analysis of the

contract should be placed in context, noting that '[t]he business conditions under which [a] contract was formed directly affect the parties' relative bargaining power, reasonable expectations, and the commercial reasonableness of risk allocation as provided in the written agreement.'" Thompson Memorandum Opinion and Order at 14-15 (quoting Ramirez-Eames v. Hover, 108 N.M. 520, 523, 775 P.2d 722, 725 (1989)).  Regardless of the context, however, contracts are presumed enforceable, and "[a]bsent unusual circumstances such as fraud or material misrepresentation, duress, or unconscionability, a valid contract will be enforced, notwithstanding allegations that one party has received the better part of the bargain." Ramirez-Eames v. Hover, 108 N.M. at 522, 775 P.2d at 724 (internal citations omitted).  See Drink, Inc. v. Martinez, 89 N.M. 662, 665, 556 P.2d 348, 351 (1976)("The doctrine of unconscionability was intended to prevent oppression and unfair surprise, not to relieve a party of a bad bargain.").

The Supreme Court of New Mexico has adopted the Restatement (Second) of Contracts' definition of "unconscionable," holding that a contract is unconscionable when it is "such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." State ex rel. State Highway & Transp. Dep't v. Garley, 111 N.M. 383, 390, 806 P.2d 32, 39 (1991)(quoting Hume v. United States, 312 U.S. 406, 411 (1889)).  Under New Mexico law, a contract may be procedurally unconscionable or substantively unconscionable.  See Guthmann v. La Vida Llena, 103 N.M. 506, 510-11, 709 P.2d 675, 679-80 (1985).

A contract is procedurally unconscionable "only where the inequality is so gross that one party's choice is effectively non-existent." Id. at 510, 709 P.2d at 679.  See Bowlin's, Inc. v. Ramsey Oil Co., 99 N.M. 660, 668, 662 P.2d 661, 669 (Ct. App. 1983)(holding that a contract may be unconscionable if there is "an absence of meaningful choice on the part of one of the

parties")(citing Williams v. Walker-Thomas Furniture Co., 350 F.2d 445, 449 (D.C. Cir. 1965)).

Whether a party has meaningful choice is "determined by examining the circumstances surrounding

the contract formation, including the particular party's ability to understand the terms of the contract

and the relative bargaining power of the parties." Guthmann v. La Vida Llena, 103 N.M. at 510, 709

P.2d at 679 (internal citations omitted).  The court should consider several factors, " includ[ing] the

use of sharp practices or high pressure tactics and the relative education, sophistication or wealth

o[f] the parties, as well as the relative scarcity of the subject matter of the contract."  Id.

A contract is substantively unconscionable when the "contract terms . . . are illegal, contrary,

to public policy, or grossly unfair."  Id.  As the Supreme Court of New Mexico noted in Guthmann

v. La Vida Llena:

> In determining reasonableness or fairness, the primary concern must be with the
> terms of the contract considered in light of the circumstances existing when the
> contract was made. The test is not simple, nor can it be mechanically applied. The
> terms are to be considered "in the light of the general commercial background and
> the commercial needs of the particular trade or case." Corbin suggests the test as
> being whether the terms are "so extreme as to appear unconscionable according to
> the mores and business practices of the time and place."

Id. at 511, 709 P.2d at 680 (quoting Williams v. Walker-Thomas Furniture Co., 350 F.2d at 450).

A holding that a contract, which does not violate public policy, is unconscionable requires a finding

that one or more of the terms of the contract was grossly unfair at the time the contract was formed.

Guthmann v. La Vida Llena, 103 N.M. at 511, 709 P.2d at 680.

"A contract may also be unenforceable if it is found to be a contract of adhesion."  Thompson

Memorandum Opinion and Order at 16-17 (citing State ex rel. Udall v. Colonial Penn Ins. Co., 112

N.M. 123, 127, 812 P.2d 777, 781 (1991)).  The Supreme Court of New Mexico has specifically

defined a contract of adhesion as a contract having two features: "(i) it must be a standardized

contract prepared entirely by one party for the acceptance of another; and (ii) because of a disparity in bargaining power between the parties, the contract must be accepted by the receiving party, on a take-it-or-leave-it basis, without opportunity to negotiate terms and under the condition that acceptance is required to attain the desired product or service." Thompson Memorandum Opinion and Order at 17  (citing Albuquerque Tire Co., Inc. v. Mountain States Tel. & Tel. Co., 102 N.M. 445, 448, 697 P.2d 128, 131 (1985)).

The Supreme Court of New Mexico has understood these features as embodying three elements which must be satisfied before a contract of adhesion may be found.

> First, the agreement must occur in the form of a standardized contract prepared or adopted by one party for the acceptance of the other.  Second, the party proffering the standardized contract must enjoy a superior bargaining position because the weaker party virtually cannot avoid doing business under the particular contract terms.   Finally,  the  contract  must  be  offered  to  the  weaker  party  on  a take-it-or-leave-it basis, without opportunity for bargaining.

Guthmann v. La Vida Llena, 103 N.M. at 509, 709 P.2d at 678 (internal citations omitted).  A disparity in the bargaining power of the parties is evidenced by a "showing that the weaker party virtually could not avoid doing business under the particular . . . contract terms." Albuquerque Tire Co., Inc. v. Mountain States Tel. & Tel. Co., 102 N.M. at 448, 697 P.2d at 131.  This imbalance may result when the "dominant contracting party has monopolized the relevant geographic or product market or when all of the competitors of the dominant party use essentially the same contract terms." Id.  at 448, 697 P.2d at 131.

In New Mexico, contracts of adhesion are not automatically unenforceable; the terms of the contract must still be evaluated to determine if they are unconscionable.  See Padilla v. State Farm Mut. Auto. Ins. Co., 2003-NMSC-011, ¶ 14, n.3, 668 P.3d 901, 907 n.3 ("Even where a contract is found to be a contract of adhesion, the terms of the contract must be analyzed to determine whether

the contract as a whole, or specific provisions of it, are unconscionable.")(quoting Lytle v. CitiFinancial Servs. Inc., 810 A.2d 643, 658 (Pa. 2002)).   The Tenth Circuit shares this understanding.  See Adams v. Merrill Lynch Pierce Fenner & Smith, 888 F.2d 696, 700 (10th Cir. 1989)(remarking that, even if brokerage contracts were contracts of adhesion, no authority sustained the conclusion that arbitration clauses in the contracts were unconscionable).

### NON-SIGNATORIES' ABILITY TO COMPEL A SIGNATORY TO ARBITRATE

In Horanburg v. Felter, 2004-NMCA-121, 99 P.3d 685, the New Mexico Court of Appeals addressed the issue whether a non-signatory to an arbitration agreement could compel arbitration against a signatory to the agreement.  See 2004-NMCA-121, ¶ 1, 99 P.3d at 686.  In Horanburg v. Felter, the plaintiff sued Lovelace for retaliation, negligent hire and retention, constructive discharge, intentional infliction of emotional distress, and violation of the New Mexico Human Rights Act.  See 2004-NMCA-121, ¶ 2, 99 P.3d at 686.  The plaintiff also asserted claims against a doctor, Felter, alleging assault, battery, and violation of the New Mexico Human Rights Act.  See id. ¶ 2, 99 P.3d at 686. The district court determined that, although Dr. Felter was not a party to the arbitration agreement between Lovelace and the plaintiff, the plaintiff's claims against Dr. Felter should be included in the arbitration proceedings.  See id. ¶ 1, 99 P.3d at 686.  The plaintiff appealed the district court's determination, asserting that the arbitration agreement was narrow in scope and that it was error for the district court to conclude that her claims against Dr. Felter, a co-employee, were within the scope of the arbitration agreement.  See id. ¶ 6, 99 P.3d at 689.

The New Mexico Court of Appeals stated that, "[g]enerally, third parties who are not signatories to an arbitration agreement are not bound by the agreement and are not subject to, and cannot compel, arbitration."  Horanburg v. Felter, 2004-NMCA-121,  ¶ 16, 99 P.3d at 689 (citing

-26-

Pueblo of Laguna v. Cillessen & Son, Inc., 101 N.M. 341, 343-44, 682 P.2d 197, 199-200 (1984)

and Cherry Creek Card & Party Shop, Inc. v. Hallmark Mktg. Corp., 176 F.Supp.2d 1091, 1097

(D.Colo. 2001)). The New Mexico Court of Appeals noted that, to extend the arbitration agreement

to a non-signatory party, the district court relied on a case from the United States Court of Appeals

for the Third Circuit that applied a principal-agent analysis when the interest of the non-signatory

is directly related to that of a signatory. See Horanburg v. Felter, 2004-NMCA-121, ¶ 16, 99 P.3d

685, 689 (citing Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1122 (3d

Cir.1993)(holding that a principal's agents, employees, and representatives were covered under the

terms of arbitration agreements that bound the principal)).

The New Mexico Court of Appeals, in Horanburg v. Felter, determined that such an agency

analysis did not apply to a non-signatory doctor, because although the non-signatory doctor was an

employee of Lovelace, the issue whether he was acting within the course and scope of his

employment with regard to the plaintiff's allegations against him remained to be answered. See

Horanburg v. Felter, 2004-NMCA-121,  ¶ 16, 99 P.3d 685, 689.

The New Mexico Court of Appeals, in Horanburg v. Felter, also noted that a line of federal

cases finds exceptions to the general rule that a non-signatory cannot compel arbitration based on

principles of equitable estoppel under two circumstances: "(1) when a signatory to the agreement

must rely on the terms of the agreement in making a claim against a non-signatory; or (2) when a

signatory alleges substantially interdependent and concerted misconduct by both another signatory

and a non-signatory, making arbitration between signatories meaningless."  Horanburg v. Felter,

2004-NMCA-121, ¶ 17, 99 P.3d 685, 689 (citing Grigson v. Creative Artists Agency, L.L.C., 210

F.3d 524, 527-28 (5th Cir. 2000)(upholding district court decision allowing non-signatory to compel

arbitration when complaint asserted tortious interference claims arising in part out of the agreement giving rise to the arbitration and asserted collusive and conspiratorial action on the part of the non-signatories and a signatory); MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999)(holding that equitable estoppel allowed a non-signatory to compel arbitration when the plaintiff's claims against the non-signatory depended entirely upon a contractual obligation arising from the agreement containing the arbitration clause and alleged a collusive fraudulent scheme on the part of the signatory and non-signatory); Long v. Silver, 248 F.3d 309, 320 (4th Cir. 2001)(applying the "intertwined claims" test among others to hold that non-signatory may invoke the arbitration clause); McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co., 741 F.2d 342, 344 (11th Cir. 1984) (recognizing that a non-signatory may compel arbitration based on estoppel and the intertwined claims test)).

Nevertheless, the New Mexico Court of Appeals in Horanburg v. Felter determined that, even if it were to assume that a non-signatory to an arbitration agreement can compel arbitration by virtue of equitable estoppel, it did not believe that equitable estoppel was appropriate in the non-signatory doctor's case. See 2004-NMCA-121, ¶ 18, 99 P.3d at 690. The New Mexico Court of Appeals noted that in both Grigson v. Creative Artists Agency, L.L.C. and in MS Dealer Serv. Corp. v. Franklin, where equitable estoppel was determined to be appropriate, the claims involved had the characteristics of both circumstances that the courts recognized as bases for equitable estoppel; the claims were dependent upon the agreement and alleged substantially interdependent and concerted misconduct. Horanburg v. Felter, 2004-NMCA-121, ¶ 18, 99 P.3d at 690. The Court of Appeals of New Mexico distinguished the non-signatory doctor's case by noting neither circumstance was fully present: The plaintiff's claims against the non-signatory doctor were not

alleged to be derived from the agreement between the plaintiff and Lovelace, and the non-signatory doctor's alleged conduct, which had not been determined to be within the course and scope of his employment, was not the concerted type of conduct addressed by the Grigson v. Creative Artists Agency, L.L.C. and  MS Dealer Service Corp. v. Franklin line of cases.  See Horanburg v. Felter, 2004-NMCA-121, ¶ 18, 99 P.3d at 690.

Morever, the Court of Appeals of New Mexico in Horanburg v. Felter noted that "arbitration is essentially a matter concerning the agreement of the parties," and other New Mexico caselaw "recognize[s] that equitable estoppel is appropriate to avoid rendering meaningless the purpose of the signatories' agreement, an arbitration, in the absence of a non-signatory."  Horanburg v. Felter, 2004-NMCA-121, ¶ 19, 99 P.3d at 690.  The Court of Appeals of New Mexico decided that the arbitration agreement between Lovelace and the plaintiff would not be rendered meaningless if the non-signatory doctor was not involved in the arbitration.  See id., 99 P.3d at 690.  The Court of Appeals stated:

> Although Plaintiff's claims against Lovelace for constructive discharge, intentional infliction of emotional distress, and violation of the New Mexico Human Rights Act, involve [the non-signatory doctor], Plaintiff also asserts claims against Lovelace for retaliation and negligent hire and retention, which appear to involve a previous discrimination claim and subsequent disciplinary action, not involving conduct by [the non-signatory doctor]. Despite a level of connectedness, Plaintiff's claims against [the non-signatory doctor] for assault and battery can be determined separately from her claims against Lovelace. We cannot say that the intent of the arbitration agreement embraces Plaintiff's forfeiture of her ability to pursue her claims against [the non-signatory doctor] through the regular court process.

Id., 99 P.3d at 690 (citing Pueblo of Laguna, 101 N.M. at 344, 682 P.2d at 200 (declining to consolidate arbitration because it was not contemplated by the parties)).

## ANALYSIS

Ament, Fisk, and Lincoln County Auto Brokers seek to have the Court dismiss the court

proceedings against them.  These three Defendants contend that the Court should remand this case to arbitration so that all issues can be resolved by arbitration, and dismiss the Complaint against them.  While the Court agrees that the claims against Lincoln County Auto Brokers should be arbitrated, the Court concludes that the Plaintiffs, Ament, and Fisk did not agree to arbitrate their disputes.  Furthermore, the Court notes that it does not believe that it is proper to divide the issues sent to arbitration by subject matter as the Defendants suggest.  While such a division may make sense regarding the positions taken by the Defendants who have multiple attorneys, the Court does not believe it is proper to make a subject-matter division regarding the issues to be sent to arbitration.  Rather, the Court believes it is proper to consider that Ament and Fisk were not signatories to the arbitration agreement, that the Defendants have not sufficiently argued that an exception to the general rule applies, that the arbitration agreement was broad and signed only by Plaintiffs and Lincoln County Auto Brokers, and that Plaintiff has not satisfied their burden to show that § 1983 claims against Lincoln County Auto Brokers should not be arbitrated.  Thus, the Court will dismiss the claims against Lincoln County Auto Brokers and refer those causes of action to arbitration, but will not dismiss the claims against Ament and Fisk because they were not parties to the arbitration agreement.

I.     **THE COURT WILL COMPEL THE ARBITRATION OF THE DISPUTES BETWEEN THE PLAINTIFFS AND LINCOLN COUNTY AUTO BROKERS.**

There is much that is not in dispute.  There is, for example, no dispute that the Plaintiffs and Lincoln County Auto Brokers signed the arbitration agreement.  Nor is there any contention that the arbitration agreement is unconscionable.  Rather, the Plaintiffs limit their argument to the contention that some of their claims exceed the scope of the arbitration agreement and that, therefore, it would be inefficient to split their case between two forums.  See Response at 1-2.

The Plaintiffs argue that, by its terms, the arbitration agreement limits arbitration to issues regarding: (i) the purchase/lease of the referenced motor vehicles; (ii) any product or service problems in connection with the vehicle; (iii) any finding obtained in connection with the transaction; and (iv) any dispute with reference to the existence, scope, or validity of the agreement. See Response at 1-2 (citing Agreement to Arbitrate ¶ 1, at 1). The Plaintiffs contend that only two counts -- paragraph 45 (the UCC Claim) and paragraph 46 (Motor Vehicle Quality Assurance Act) -- are actionable under the Arbitration Agreement. See Response at 2. The Plaintiffs state that the arbitration of the state commercial-code claims are a minor part of the issues set forth in their Complaint. See id.

The Plaintiffs argue that dismissal of the state claims will not result in dismissal of the federal claims. See id. They argue that their state-law claims do not duplicate the significant constitutional claims that will remain in federal court. See id. The Plaintiffs maintain that the dismissal of the state commercial-code claims would result in claim splitting, would not be an efficient use of limited judicial resources, and would abuse the administration of justice in the Court. See id.

The Plaintiffs do not, however, establish why the Court should not enforce the arbitration agreement into which both parties entered on April 16, 2007. In their response, the Plaintiffs do little more than lay out the terms of the arbitration agreement. As the Agreement to Arbitrate reflects, it appears from the Agreement that the parties intended to arbitrate all issues between them.

The parties entered into an arbitration agreement to resolve any disputes. It was and has been the parties' contractual intent to proceed with arbitration on all disputes between them. The Court believes that the agreement is so broad that it would be difficult to imagine any dispute,

between the Plaintiffs and Lincoln County Auto Brokers, LLC, that does not come within the scope of the agreement's language.

Moreover, the Court should refer the claims in the Plaintiffs' Complaint against Lincoln County Auto Brokers to arbitration in accordance with the Agreement to Arbitrate because the Plaintiffs' allegations fall squarely within the terms of the agreement. The allegations in the Plaintiffs' Complaint arise from the issues enumerated in the four sections of the arbitration agreement. All the Plaintiffs' claims arise from the sale of the vehicle to them. The parties appear to have drafted the arbitration agreement to address the claims that the Plaintiffs allege in their Complaint against Lincoln County Auto Brokers.

Additionally, because the burden "is on [the Plaintiff] to show that Congress intended to preclude a waiver of a judicial forum for [particular statutory] claims," Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. at 26, the Court looks to the Plaintiff to prove that their federal statutory claims cannot be arbitrated. Furthermore, "[i]f such an intention exists, it will be discoverable in the text of the [relevant statute], its legislative history, or an inherent conflict between arbitration and the [relevant statute]'s underlying purposes." Id. The Court does not believe that the Plaintiffs have met this burden with regard to any possible federal statutory claims, specifically any § 1983 claims, that it may bring against Lincoln County Auto Brokers. Thus, because there is a federal policy favoring arbitration and the Plaintiffs have not proven that the relevant claims are not arbitrable, the Court will order that the claims between the Plaintiffs and Lincoln County Auto Brokers be arbitrated.[3]

---

[3] The Court, as a district court, cannot declare that the Supreme Court has implicitly overruled McDonald v. City of West Branch, Michigan. The Court notes, however, that in Wiedemann v. City of Oklahoma City, 76 Fed.Appx. 931(10th Cir. 2003), the Tenth Circuit

Finally, the Court should not be concerned with efficiency of possible claim splitting. Federal claims can be arbitrated, and at this stage, there is no indication that the arbitrators will not be able and willing to decide all appropriate claims.  In any case, the Court should not allow any concerns about efficiency to displace Congress' desire that the courts of the nation allow arbitration to proceed when the parties so agree.

In conclusion, the Plaintiffs and Lincoln County Auto Brokers contractually intended to proceed through arbitration if a dispute arose regarding the 2001 Honda Accord.  In accordance with the parties' signed Agreement to Arbitrate, the Court will order the Plaintiffs and Lincoln County Auto Brokers, LLC to arbitrate in accordance with the parties' signed Agreement to Arbitrate. Because the Plaintiffs have not argued that the Court should stay rather than dismiss the case against Lincoln County Auto Brokers, the Court will dismiss the Complaint against Lincoln County Auto Brokers.

## II.   THE COURT WILL NOT ORDER THE ARBITRATION OF THE DISPUTE BETWEEN THE PLAINTIFFS AND AMENT AND FISK.

Ament and Fisk did not sign the Agreement to Arbitrate, and the document does not talk about them, either specifically or generally.  Furthermore, the Court does not believe that any of the exceptions to the general rule that a nonsignatory cannot force a signatory to arbitrate their claims

---

acknowledged that, "[s]ince McDonald, the Court no longer views 'arbitration [as] inferior to the judicial process for resolving statutory claims.'" Wiedemann v. City of Oklahoma City, 76 Fed.Appx. at 932 (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. at 34 n. 5). While there is some tension between the Supreme Court's analysis in McDonald and its later cases, the Court believes that its conclusion is consistent with a narrow reading of McDonald.  The Court is not, at this stage, saying that the Plaintiffs' § 1983 cause of action against Lincoln County Auto Brokers will never be judicially enforceable or that it will give preclusive affect to an arbitration award in a subsequent § 1983 action.  The Court is saying only, at this stage, that the Plaintiffs and Lincoln County Auto Brokers must arbitrate all their claims, and the Court may or may not have to address the McDonald issues at a later point in the proceedings.

apply in this case, nor did the Court hear any of the parties sufficiently argue that any of these exceptions apply at the June 10, 2008 hearing or in their briefing.  The Court does not understand the Defendants to be relying on any of these exceptions.  Accordingly, the Court cannot say that these three parties agreed to arbitrate their disputes or that they should be forced to arbitrate their disputes.  While these parties could decide to arbitrate their differences, they have not yet done so, and the Court cannot thus deprive them of their right to litigate in Court.  Accordingly, this portion of the motion is denied.

**IT IS ORDERED** that the Motion to Dismiss and to Refer this Cause of Action to Arbitration is granted in part and denied in part.  The Court will order the Plaintiffs' claims against Defendant Lincoln County Auto Brokers, LLC be arbitrated.  The Court will dismiss the Plaintiffs' Complaint against Defendant Lincoln County Auto Brokers.  The Court will deny the motion to compel the Plaintiffs to arbitrate their claims against Defendants Eric Ament and David Fisk.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Patricia S. Ortiz
Ruidoso, New Mexico

‑‑ and ‑‑

John R Beauvais
J. Robert Beauvais, P.A.
Ruidoso, New Mexico

*Attorneys for Plaintiff Everett Brophy*

-34-

John R Beauvais
J. Robert Beauvais, P.A.
Ruidoso, New Mexico

 *Attorney for Plaintiff Shayla Christensen*

Michael Danoff
Michael Danoff & Associates, P.C.
Albuquerque, New Mexico

 *Attorney for Defendants David Fisk, and Lincoln County Auto Brokers, LLC*

Richard E. Olsen
Hinkle, Hensley, Shanor & Martin, LLP
Roswell, New Mexico

 *Attorney for Defendants The Village of Ruidoso ex rel Ruidoso Police Department, and Ray*
 *Merrit*

Richard E. Olsen
Hinkle, Hensley, Shanor & Martin, LLP
Roswell, New Mexico

-- and --

Michael Danoff
Michael Danoff & Associates, P.C.
Albuquerque, New Mexico

 *Attorneys for Defendant Eric Ament*