**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

EVERETT BROPHY AND SHAYLA
CHRISTENSEN,

      Plaintiffs,

vs.   No. CIV 07-0751 JB/KBM

ERIC AMENT, DAVID FISK AND JOHN
DOE, Individually, as members of
Lincoln County Auto Brokers, LLC, and
as Ruidoso Police Officers, LINCOLN
COUNTY AUTOBROKERS, LLC,
RAY MERRIT and THE VILLAGE OF
RUIDOSO ex rel RUIDOSO POLICE
DEPARTMENT, and CITY BANK TEXAS,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** comes before the Court on Defendants Eric Ament and David Fisk's Motion to Dismiss, filed September 6, 2007 (Doc. 7). The Court held a hearing on the motion on June 10, 2008. The primary issue is whether the Plaintiffs' Complaint states a cause of action for personal liability against Defendants Eric Ament and David Fisk for individual involvement in the alleged wrongdoing from which the limited liability company structure of their Lincoln County Auto Brokers, LLC does not shield them. Because the Complaint's allegations show that Ament and Fisk were personally involved in some of the alleged events, because New Mexico's Limited Liability Company Act, N.M.S.A. 1978, §§ 53-19-1 to 53-19-13, and supporting case law, indicate that an agent of a corporation, or member of a limited liability company, may be held liable for the consequences of his or her own acts or omissions, including tortious acts, and because Aments' actions may implicate an improper use of his position as a police officer, but because the Plaintiffs

have failed to allege Ament and Fisk's personal involvement in the initial vehicle transaction, the Court will grant in part and deny in part Defendants' motion to dismiss. The Court will grant the motion to dismiss, without prejudice to the Plaintiffs amending their Complaint, on all claims against Ament and Fisk regarding the initial vehicle transaction. The Court will, however, otherwise deny the motion.

## FACTUAL BACKGROUND

Ament, Fisk, and Defendant John Doe are members of the Lincoln County Auto Brokers, and own and manage the company. See Transmittal of State Court Documents, Exhibit 2, Complaint ¶ 4, at 1 (dated July 2, 2007), filed November 29, 2007 (Doc. 9)("Complaint"). During all relevant times, Defendant Ruidoso Police Department employed Ament and Merrit as police officers. See id. ¶ 9, at 2. Also during all events, of which the Plaintiffs complain, both Ament and Merrit were on duty as police officers, using official police vehicles, clothed in full uniform, and armed with weapons. See id.

On or about April 16, 2007, the Plaintiffs purchased a Honda Accord from Lincoln County Auto Brokers. See id. ¶ 11, at 2. The vehicle that the Plaintiffs purchased proved to be defective within a week of its purchase. See id. ¶ 15, at 2. Upon notice that the car needed repairs, the "sellers" refused to repair the vehicle until the entire down payment was paid in full. Id. ¶ 16, at 2. Ament threatened to arrest Plaintiff Everett Brophy for failing to pay. See id. ¶ 17, at 2.

The parties came to an oral agreement that, if the Plaintiffs made a payment of $600.00, the car would be repaired. See id. ¶ 18, at 3. The Plaintiffs allege that Plaintiff Shayla Christensen drove the vehicle to Lincoln County Auto Brokers to make a partial payment and told the "Defendants" that Brophy would come by after work to pay the remaining balance. Id. ¶ 19, at 3.

According to the Plaintiffs, "Defendants," Doe, and Fisk took Christensen into an office, yelled at her, and refused to allow her to leave until they had the car down payment in full. Id. ¶ 20, at 3.

The Plaintiffs state that Christensen called 911, asked for an officer, and was told that one was already on the way. See id. ¶ 21, at 3. The Ruidoso Police Department sent Defendant Ray Merritt to the scene. See id. ¶ 22, at 3. Christensen then called Brophy. See id. ¶ 21, at 3.

The Plaintiffs allege that, at that time, Ament joined Doe and Fisk in threatening not to release Christensen until he had his money. See id. The Plaintiffs allege Doe, Fisk, and Ament did not allow Christensen to leave. See id. ¶ 23, at 3. The Plaintiffs also contend that, when Merrit arrived, he and the other Defendants verbally abused Christensen. See id. ¶ 24, at 3.

The Plaintiffs allege that Ament threatened to arrest Christensen if she did not remove her personal property from the vehicle. See id. ¶ 27, at 3. Merrit joined in the threats of arrest. See id. ¶ 28, at 4. Christensen then complied. See id. ¶ 29, at 4.

Brophy arrived, and he and Christensen were ushered off the property by the "Defendants" without their vehicle. Id. ¶ 30, at 4. Brophy and Christensen allege that they immediately went to the police department to report the incident, but were told they were unable to file a report and were only able to file a civilian complaint against the two officers for internal investigation. See id. ¶¶ 32, 33, at 4. The receptionist at the Police Department told the Plaintiffs that she had just received a call from Ament and Merrit directing her not to allow Brophy and Christensen to file any reports. See id. ¶ 32, at 4. Accordingly, the Plaintiffs were not allowed to file any reports of the illegal conduct of the officers and the other Defendants. See id. ¶ 34, at 4.

At the time of these events, no written notice of default or repossession had been served on Brophy or Christensen. See id. ¶ 35, at 4. On June 21, 2007, John Doe served on counsel for the

Plaintiffs an illegal notice of redemption rights.  See id. ¶ 36, at 4.

On or about June 22, 2007, Brophy and Christensen saw their vehicle parked outside of a car repair shop in Ruidoso, New Mexico. See id. ¶ 37, at 4. According to the Plaintiffs, they stopped to take pictures of the vehicle to show that others were driving their vehicle. See id. ¶ 38, at 4. The Plaintiffs allege that, because the sun prevented photographing the vehicle identification number through the windshield, Brophy opened the door to take the photograph. See id. ¶ 39, at 4.

The Plaintiffs allege that Ament and Merrit immediately appeared on the scene, and although he saw Brophy and Christensen, did not detain them, but rather pulled Brophy's parents over in their vehicle. See id. ¶¶ 40, 41, at 5. Ament accused Brophy's parents of attempting to steal the vehicle and demanded to know their association with the Plaintiffs. See ¶ 40, at 5. Ament threatened to have Brophy arrested for attempting to steal a vehicle. See id.

The Plaintiffs remain in debt to City Bank, Texas for the repossessed vehicle. See id. ¶ 42, at 5.

## PROCEDURAL BACKGROUND

On September 6, 2007, Ament, Fisk, and Lincoln County Auto Brokers filed a Motion to Dismiss and to Refer this Cause of Action to Arbitration. See Motion to Dismiss and to Refer This Cause of Action to Arbitration, filed September 6, 2007 (Doc. 5 )("Arbitration Motion"). On the same day, Ament and Fisk filed this motion. See Motion to Dismiss, filed September 6, 2007 (Doc. 7)("Motion to Dismiss"). Ament and Fisk have moved to dismiss the claims against them as individuals. See id. at 1.[1]

---

[1] The Plaintiffs state in their Response that Doe has moved to dismiss the claims against him, but the Court does not believe that characterization of the motion is accurate. The Court interprets the motion as being on behalf of only Ament and Fisk, and no one has entered an appearance or

In their motion to dismiss, Ament and Fisk move the Court, pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Complaint for failure to state a cause of action against them, with prejudice and with an award of costs. See Motion to Dismiss at 2. Ament and Fisk argue that the Court should dismiss the claims against them individually because, at all times during which Ament and Fisk dealt with the Plaintiffs, it was in their capacity as members of Lincoln County Auto Brokers. See id. at 1. Ament and Fisk contend that there are no allegations in the Complaint that there were any transactions between the Plaintiffs and anyone other than Lincoln County Auto Brokers. See id. at 1-2. Ament and Fisk state that there was no individual involvement on their behalf and that they acted only in the capacity of the limited liability company. See id. at 1. Fisk and Ament also request, alternatively, that, if the Court grants their Motion to Dismiss and to Refer this Cause of Action to Arbitration, the Court should refer this matter against them to arbitration. See id. at 2.

Fisk and Ament state that, at the time that they filed their motion to dismiss, they were unable to secure concurrence from the Plaintiffs' counsel because of the nature of this motion. See id. at 2. Fisk and Ament also stated that they did not expect to get concurrence. See id. On May 14, 2008, the Plaintiffs filed a response, asking the Court to deny the motion to dismiss. See Response to Motion to Dismiss, filed May 14, 2008 (Doc. 12)("Response"). On the same day, the Plaintiffs filed a memorandum in support of their Response. See Memorandum Brief in Support of Response to Motion to Dismiss [Fed. R. Civ. P. 12(b)(6)], filed May 14, 2008 (Doc. 13)("Response Memorandum"). On May 23, 2008, Ament and Fisk filed a Reply to Plaintiffs' Response. See Reply to Plaintiff's [sic] Response to Motion to Dismiss, filed May 23, 2008 (Doc. 18).

---

moved on Doe's behalf.

On July 9, 2008, the Court granted in part and denied in part the Motion to Dismiss and to Refer this Cause of Action to Arbitrate. See Memorandum Opinion and Order at 34, filed July 9, 2008 (Doc. 23)("Memorandum Opinion and Order"). The Court granted the motion to the extent that it sought to compel the dispute between the Plaintiffs and Lincoln County Auto Brokers to arbitration, and dismissed the Complaint against Lincoln County Auto Brokers. See id. at 34. The Court denied the motion as it related to Ament and Fisk, and kept them in the lawsuit. See id. at 34.

At the June 10, 2008 hearing, the Defendants indicated to the Court that they intended their motion to dismiss to be more narrow than it appeared from the face of the motion and the supporting memorandum. Specifically, the Defendants indicated that the motion to dismiss Ament and Fisk related to their involvement in the initial vehicle transaction and not to all claims against Ament and Fisk. See Transcript of Hearing at 28:4-32:9 (taken June 10, 2008)("Tr.")(Danoff & Court)("[T]he motion to dismiss against those individuals [Fisk and Ament] relating to the vehicle should be granted . . . the car matters or vehicle matters should be heard before the arbitrator as it relates to Lincoln County Auto, and . . . Mr. Fisk and Mr. Ament should not be a part of that."); Id. at 32:15-18 (Olson)("I agree that they [Fisk and Ament] probably ought to be dismissed because it doesn't look like there's any basis pled for pursuing those sorts of claims against them.").[2] Additionally, the Defendants acknowledged that the civil-rights claims and other claims against Ament and Fisk for tortious behavior was separate from the initial transaction relating to the vehicle and thus such claims should not be dismissed.

> COURT:    But are you somewhat conceding that the allegations . . that Ament and Fisk were personally involved in the alleged wrongdoing after

---

[2] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

>           that point? And so the motion to dismiss should be denied as to those
>           counts.
>
> OLSEN:    Yes, sir. I don't think there's any question about that with respect to
>           those issues. . . . I always anticipated that those issues would have to
>           be tried.

32:19-33:4 (Court & Olson). See id. at 38:18-22 (Danoff)("Now, if they said they did other tortious acts from a civil rights standpoint, I believe that's separate [from the initial vehicle transaction], but I'm saying as to the vehicle, everything they did dealt with Lincoln County Auto Brokers [not Ament and Fisk].").

At the hearing, the Plaintiffs argued that none of the claims against Ament or Fisk should be dismissed, and specifically that Ament and Fisk were involved in the initial vehicle transaction: "[T]he [initial] transaction [wa]s not a discrete stand-alone transaction because it's not just purchasing the car. It's the rights and remedies under the quality assurance act and the allegations under the Unfair Practices Act where they are acting as principals for the business entity and they are committing tortious acts." Id. at 36:9-14 (Beauvais). The Plaintiffs asked the Court to allow them to amend the Complaint and allege ultra vires if the Court decided to dismiss the vehicle related claims against Ament and Fisk. See Id. at 36:15-19 (Beauvais).

**LAW REGARDING THE STANDARD FOR DECIDING A MOTION TO DISMISS**

Under rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light

most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006); Hous. Auth. of Kaw Tribe v. City of Ponca City, 952 F.2d 1183, 1187 (10th Cir. 1991).

A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (internal citation omitted). "[T]he Supreme Court recently . . . prescribed a new inquiry for us to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. at 1967, 1969). "The [United States Supreme] Court explained that a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. at 1974)(alterations omitted). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177. The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be

true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly, 127 S Ct. at 1974)(internal citations omitted).

> This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them. "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." [Bell Atl. Corp. v. Twombly, 127 S.Ct.] at 1965 n. 3. See Airborne Beepers & Video, Inc. v. AT & T Mobility L.L.C., 499 F.3d 663, 667 (7th Cir. 2007) ("[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."). The Twombly Court was particularly critical of complaints that "mentioned no specific time, place, or person involved in the alleged conspiracies." 127 S. Ct. at 1971 n. 10. Given such a complaint, "a defendant seeking to respond to plaintiffs' conclusory allegations . . . would have little idea where to begin." Id.

Robbins v. Oklahoma, 519 F.3d at 1248.

In determining the sufficiency of a complaint, all well-pleaded factual allegations are to be taken as true. See Timpanogos Tribe v. Conway, 286 F.3d 1195, 1204 (l0th Cir. 2002). "Nevertheless, conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Belman, 935 F.2d 1106, 1110 (l0th Cir. 1991). "Moreover, in analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations." Id. Only well-pleaded facts, as distinguished from conclusory allegations, are admitted when considering a motion to dismiss for failure to state a claim upon which relief can be granted. See Smith v. Plati, 258 F.3d 1167, 1174 (10th Cir. 2001).

## NEW MEXICO LAW REGARDING LIABILITY FOR MEMBERS OF A LIMITED LIABILITY COMPANY

A limited liability company is a separate business entity from its members. Members of a limited liability company are legally distinct from the limited liability company itself. See C. Bishop & D. Kleinberger, Limited Liability Companies: Tax and Business Law ¶ 6.01 (2008). Each member in a limited liability company enjoys a corporate-like liability shield. See id. "The function of the liability shield is to sever the connection between member status and personal responsibility for the obligations of the entity." Id. "An LLC member risks the amount the member invested in the enterprise but otherwise enjoys limited liability." Id. (internal quotation marks omitted).

"The liability shield for an LLC member is analogous to the protections enjoyed by a shareholder in a modern corporation." Id. The protection is not all-encompassing. See id. Similar to its corporate counterpart, the limited-liability-company shield has its gaps and limitations, which generally include the following four major categories: "(1) false or defective formation of the entity; (2) wrongful conduct by a member; (3) abuse of the shield; and (4) capital-related obligations imposed by enabling statutes." Id. The limited liability company shield relates only to liability arising from a member's status as member. See id. ¶ 6.04.

"[T]he shield provides no protection when a member engages in actionable conduct. Liability in those circumstances can arise under both common law and statutory rule, and the fact that a member's conduct is in connection with, or even in the service of, a limited liability company will not negate liability." Id.

The New Mexico Limited Liability Company Act, N.M.S.A. 1978, §§ 53-19-2 - 53-19-13, governs limited liability companies formed in New Mexico. See id. The Limited Liability Company Act states the following regarding the liability of its members to third parties:

> Except as otherwise provided in the Limited Liability Company Act, the debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company. No member or manager of a limited liability company and no other person with authority pursuant to the Limited Liability Company Act to wind up the business or affairs of the limited liability company following its dissolution, shall be obligated personally for any debt, obligation or liability of the limited liability company solely by reason of being a member or manager of the limited liability company or having authority pursuant to the Limited Liability Company Act to wind up the company's business and affairs following its dissolution. <u>A person may be liable for any act or omission performed in his capacity as a manager of a limited liability company if there is a basis for liability. Nothing in this section shall be construed to immunize any person from liability for the consequences of his own acts or omissions for which he otherwise may be liable</u>.

N.M.S.A. 1978, § 53-19-13 (emphasis added).

New Mexico case law demonstrates that corporate officers, directors, and individuals can be held liable if those individuals participate in the commencement of tortious acts. In <u>Stinson v. Berry</u>, 1997-NMCA-076, 943 P.2d 129, an employee died in an explosion while welding a tank, and the family sued the president of the corporation. See <u>id.</u> ¶¶ 3-6, 343 P.2d at 131. The district court granted summary judgment in favor of the corporate president on the basis that he was acting at all times within the scope of his corporate duties. See <u>id.</u> ¶ 6, 943 P.2d at 131. The Court of Appeals of New Mexico disagreed, and held that "an officer or director of a corporation acting within the scope of his corporate duties may be personally liable for a tort injuring a third party, so long as the director or officer has a duty to that third party." <u>Id.</u> ¶ 20, 943 P.2d at 134. Additionally, the New Mexico Court of Appeals stated:

> It is a basic tenet of corporate law that a corporation is a legal entity, separate from its shareholders, directors, and officers. Thus, the shareholders, directors and officers are not personally liable for the acts and obligations of the corporation. Corporate directors cannot be held vicariously liable for the corporation's torts merely by virtue of the office they hold. However, if an officer or director actively participates in the commission of the tortious act of the corporation, he will be liable, along with the corporation. Thus, if the officer or director directed, controlled,

> approved or ratified the activity that led to the injury, he or she can be held personally liable.

Id. ¶ 17, 943 P.2d at 133 (internal citations omitted). In Lobato v. Pay Less Drug Stores. Inc., 261 F.2d 406 (10th Cir. 1958), the United States Court of Appeals for the Tenth Circuit stated:

> [i]t is the general rule that if an officer or agent of a corporation directs or participates actively in the commission of a tortious act or an act from which a tort necessarily follows or may reasonably be expected to follow, he is personally liable to a third person for injuries proximately resulting therefrom. But merely being an officer or agent of a corporation does not render one personally liable for a tortious act of the corporation. Specific direction or sanction of, or active participation or cooperation in, a positively wrongful act of commission or omission which operates to the injury or prejudice of the complaining party is necessary to generate individual liability in damages of an officer or agent of a corporation for the tort of the corporation.

Id. at 408-409.  See Kreischer v. Armijo, 118 N.M. 671, 673, 884 P.2d 827, 829 (Ct.App. 1994)(stating that, "[w]e recognize that an agent may be held individually liable for his own tortious acts, whether or not he was acting for a disclosed principal."); Kaveny v. MDA Enterprises, Inc., 2005-NMCA-118, ¶ 20, 120 P.3d 854, 858 (stating that, "[o]fficers of corporations can be held personally liable when they commit intentional torts."); Bogle v. Summit Investment Co., LLC, 2005-NMCA-024, ¶ 18, 107 P.3d 520, 528 (stating that, "under New Mexico's Limited Liability Company Act . . . and supporting case law, an agent of a corporation may be held liable for the consequences of his own acts or omissions, including tortious acts.").

Use of improper means, or conduct taken for any improper motive, by a member of a limited liability company can serve as a basis for direct liability against that person. See Bogle v. Summit Investment Co., LLC, 2005-NMCA-024, ¶¶ 20, 21, 107 P.3d at 528-29.  The Court of Appeals of New Mexico defined improper means as including not only tortious behavior, but any "predatory" behavior, including behavior that is wrongful based on an established standard of a trade or

profession. Id. (citing Diversity Corp. v. Chem-Source Corp., 1998-NMCA-112, ¶ 21, 965 P.2d 332, 339).

## ANALYSIS

The Court has already decided that it will not compel the Plaintiffs to arbitrate their dispute with Ament and Fisk. Accordingly, unless Ament and Fisk can prevail on this motion to dismiss, they must remain in the case. And because the Complaint alleges that Ament and Fisk were personally involved in some of the alleged wrongdoing, but not others, the Court will grant in part and deny in part the motion to dismiss.

### I. THE COURT WILL NOT COMPEL THE PLAINTIFFS TO ARBITRATE THEIR CLAIMS AGAINST AMENT AND FISK.

As the Court stated in its July 9, 2008 Memorandum Opinion and Order, it will not compel the Plaintiffs, Ament, and Fisk to arbitrate their dispute. See Memorandum Opinion and Order at 34. These four parties did not, in the Agreement to Arbitrate, agree to arbitrate the disputes among them; Fisk and Ament did not sign the Agreement to Arbitrate, and the Agreement to Arbitrate covers only disputes between the Plaintiffs and Lincoln County Auto Brokers. The Court cannot, by fiat, deem Ament and Fisk parties to an agreement that they did not sign. Thus, Ament and Fisk remain in this case unless they are successful in this separate motion to dismiss.

### II. THE COMPLAINT ALLEGES THAT AMENT AND FISK WERE PERSONALLY INVOLVED IN AT LEAST SOME OF THE ALLEGED WRONGDOING.

Ament and Fisk contend that, even if the Court assumes the Complaint's allegations to be true, the Plaintiffs have failed to establish why the Court should not dismiss them. See Memorandum in Support of Motion to Dismiss at 1-2, filed September 6, 2007 (Doc. 8)("Motion to Dismiss Memorandum"). There is no dispute that the contract was between the Plaintiffs and

Lincoln County Auto Brokers.  From this fact, Ament and Fisk contend that there are no allegations in the Complaint that the Plaintiffs had any transactions with anyone other than Lincoln County Auto Brokers.  See id. at 1-2.  Ament and Fisk contend that there was no individual involvement by them in the transaction between the Plaintiffs and Lincoln County Auto Brokers.  See id.

While that characterization might have been correct for the initial purchase of the vehicle, there are many other events and actions set forth in the Complaint aside from the initial transaction. There are specific allegations of individual involvement by Ament and Fisk.  According to the Plaintiffs, "Defendants," Doe, and Fisk took Christensen into an office, yelled at her, and refused to allow her to leave until they had the car down payment in full. Complaint ¶ 20, at 3.  The Plaintiffs allege that, at that time, Ament joined Doe and Fisk in threatening not to release Christensen until he had his money.  See id. ¶ 21, at 3  The Plaintiffs also allege that, after the Police Department sent Merrit to the scene,  Doe, Fisk, and Ament did not allow Christensen to leave.  See id. ¶¶ 22, 23, at 3.  Additionally, the Plaintiffs contend  that Merrit and the other "Defendants" verbally abused Christensen.  Id.  ¶ 24, at 3.

The Plaintiffs allege that Ament threatened to arrest Christensen if she did not remove her personal property from the vehicle.  See id.  ¶ 27, at 3.  The Plaintiffs further allege that, when they went to the police station, the receptionist at the Police Department told the Plaintiffs that she had just received a call from Ament and Merrit directing her not to allow Brophy and Christensen to file any reports.  See id. ¶ 32, at 4.  The Plaintiffs also allege that, when they went to take a picture of their repossessed vehicle,  Ament and Merrit immediately appeared, and although he saw Brophy and Christensen, did not detain them, but rather pulled Brophy's parents over in their vehicle.  See id.  ¶¶ 40, 41, at 5.  Ament accused Brophy's parents of attempting to steal the vehicle and

demanded to know their association with the Plaintiffs. See id. ¶ 40, at 5. Ament threatened to have Brophy arrested for attempting to steal a vehicle. See id.

All of these events alleged, after the initial vehicle transaction, by the Plaintiffs suggest personal involvement of Ament and Fisk. While the Court agrees with the Defendants that the Complaint does not allege that Ament and Fisk had personal involvement in the initial vehicle transaction, the Complaint alleges personal involvement by Ament and Fisk in the alleged later wrongdoings. Thus, the Court will dismiss all claims against Ament and Fisk regarding the initial vehicle transaction, but will deny the motion to dismiss on all other claims.

### III.    A FAIR INFERENCE FROM THE ALLEGATIONS IN THE COMPLAINT IS THAT AMENT AND FISK ACTED BEYOND THEIR SCOPE OF EMPLOYMENT WITH LINCOLN COUNTY AUTO BROKERS.

Ament and Fisk base their motion on the contention that they were acting in a representative capacity as members of a New Mexico limited liability company. Ament and Fisk maintain that, at all times, in any business dealings with the Plaintiffs, Ament and Fisk dealt with the Plaintiffs in their capacity as members of Lincoln County Auto Brokers. See Motion to Dismiss Memorandum at 1-2. Ament and Fisk contend that they never represented that they were anything more than members of Lincoln County Auto Brokers. See id.

Ament and Fisk maintain that the Plaintiffs knew, when they purchased the 2001 Honda Accord, that they were purchasing the car from Lincoln County Auto Brokers, and not from Ament and Fisk. See id. Ament and Fisk further argue that they acted well within the scope of the limited liability company when they sold the 2001 Honda Accord to the Plaintiffs and then tried to collect an unpaid down payment that rightfully belonged to Lincoln County Auto Brokers. See id. at 2.

While there may be no specific allegations that Ament and Fisk acted in any capacity other

than in their capacity as members of Lincoln County Auto Brokers, the Court can reasonably infer from the allegations that, for some activities, Ament and Fisk may have been directly involved in various acts, including intentional tortious acts, and that some of those acts exceeded the scope of their employment, thus allowing them to be held personally liable. From the face of the Complaint, it appears that Ament and Fisk may have engaged in tortious acts for which they can be held individually liable and that the limited liability company may not have been involved. Specifically, the Court notes that the allegations contained in the Complaint also create possible claims against Ament regarding his actions in relation to his position as a police officer.

### IV.    THAT AMENT AND FISK WERE ACTING WITHIN THE SCOPE OF THEIR EMPLOYMENT WITH AND MEMBERSHIP IN LINCOLN COUNTY AUTO BROKERS DOES NOT SHIELD THEM FROM LIABILITY.

Even if the Complaint could be fairly read to allege that Ament and Fisk acted at all times within the scope of their employment with or membership in Lincoln County Auto Brokers, this would not automatically shield them from liability. While Ament and Fisk cannot, as members of a limited liability company, be held vicariously liable for Lincoln County Auto Brokers' sale transaction, Ament and Fisk can be held liable for their involvement in the alleged tortious conduct. Even if Ament and Fisk are correct that all their actions occurred within the scope of their employment and ownership of the limited liability company, that does not automatically shield them from liability for their alleged tortious conduct. See Kreischer v. Armijo, 118 N.M. at 673, 884 P.2d at 829 (stating that "[w]e recognize that an agent may be held individually liable for his own tortious acts, whether or not he was acting for a disclosed principal."); Kaveny v. MDA Enterprises, Inc., 2005-NMCA-118, ¶ 20, 120 P.3d at 858 (stating that, "[o]fficers of corporations can be held personally liable when they commit intentional torts."); Bogle v. Summit Investment Co., LLC,

2005-NMCA-024, ¶ 18, 107 P.3d at 528 (stating, "under New Mexico's Limited Liability Company Act . . . and supporting case law, an agent of a corporation may be held liable for the consequences of his own acts or omissions, including tortious acts.").

A corporate structure does not shield a person from his or her personal involvement in tortious conduct. It protects a shareholder or member from vicarious liability, but if the shareholder or member is involved in the tortious conduct, he or she can be sued like any other employee or any person who does not work for a corporation. The mere existence of a corporation does not shield a person from liability for tortious conduct.

Ament and Fisk contend that all transactions, including the execution of the purchase agreement and other transactions, involving the sale of the vehicle in this cause of action did not involve either of them, individually, and that everything the Plaintiffs did was with Lincoln County Auto Brokers. Ament and Fisk assert that all dealings with the Plaintiffs in this case went through Lincoln County Auto Brokers, and that Ament and Fisk never dealt in any individual capacity or any other capacity other than through Lincoln County Auto Brokers in all transactions with the Plaintiffs. As noted above, however, the Plaintiffs' allegations suggest otherwise -- that while Ament and Fisk had no personal involvement in the initial vehicle transaction -- they were both personally involved in actions after the initial transaction. Moreover, the Complaint alleges that both Fisk and Ament took numerous personal actions that affected the Plaintiffs. The face of the Complaint suggests that these personal actions may have been tortious conduct. Thus, regardless of whether Ament and Fisk were or were not within the scope of their position within the LLC, their possible tortious conduct makes them personally liable.

From the face of the Complaint, it appears that the Plaintiffs' initial business transaction

regarding the vehicle with Lincoln County Auto Brokers involved only the company, and not Ament and Fisk. The Complaint alleges that Ament and Fisk acted individually, and perhaps other than as members of Lincoln County Auto Brokers, in some of the later events. In their Response, the Plaintiffs more expressly contend that Ament and Fisk were not acting in a representative capacity as members of Lincoln County Auto Brokers. Nevertheless, a fair reading of the Complaint supports a finding that the Plaintiffs have, in the allegations of their Complaint, demonstrated how Ament and Fisk acted individually.

The Plaintiffs have shown that they may prevail against Ament and Fisk under the well-pled facts stated in the Complaint. Lincoln County Auto Brokers had a right to be paid for the services and products that it provided to the Plaintiffs, but its employees and members had to exercise its right within the law. A fair reading of the Complaint demonstrates that the Plaintiffs allege these individuals were directly involved in some of the acts giving rise to the Complaint. The Complaint, considered under the applicable standard required for dismissal, contains allegations of conduct that may give rise to personal liability.

From the Complaint, it appears that this case involves more than the initial vehicle transaction between the Plaintiffs and Lincoln County Auto Brokers. While the initial transaction involving the vehicle was only between the Plaintiffs and Lincoln County Auto Brokers, Ament and Fisk played an integral role in the efforts to collect the moneys allegedly owed. The Complaint adequately makes allegations that may make Ament and Fisk personally liable for the events after the initial vehicle transaction.

**IT IS ORDERED** that the Motion to Dismiss is granted in part and denied in part. The Court will grant the motion to dismiss, without prejudice, on all claims against Ament and Fisk

involving the initial vehicle transaction.  If the Plaintiffs wish to amend their Complaint and allege Ament and Fisk's personal involvement in the initial vehicle transaction, they should file their Amended Complaint within 10 days of the date of the entry of this memorandum opinion and order.  The Court will otherwise deny the motion.

                                        _____
                                        UNITED STATES DISTRICT JUDGE

*Counsel:*

Patricia S. Ortiz
Ruidoso, New Mexico

      -- and--

John R Beauvais
J. Robert Beauvais, P.A.
Ruidoso, New Mexico

      *Attorneys for Plaintiff Everett Brophy*

John R Beauvais
J. Robert Beauvais, P.A.
Ruidoso, New Mexico

      *Attorney for Plaintiff Shayla Christensen*

Michael Danoff
Michael Danoff & Associates, P.C.
Albuquerque, New Mexico

      *Attorney for Defendants David Fisk and Lincoln County Auto Brokers, LLC*

Richard E. Olsen
Hinkle, Hensley, Shanor & Martin, LLP
Roswell, New Mexico

>   *Attorney for Defendants The Village of Ruidoso ex rel Ruidoso Police Department and Ray Merrit*

Richard E. Olsen
Hinkle, Hensley, Shanor & Martin, LLP
Roswell, New Mexico

>   -- and --

Michael Danoff
Michael Danoff & Associates, P.C.
Albuquerque, New Mexico

>   *Attorneys for Defendant Eric Ament*