**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

EVERETT BROPHY AND
SHAYLA CHRISTENSEN,

        Plaintiffs,

vs.                                                                          No. CIV 07-0751 JB/KBM

ERIC AMENT, DAVID FISK, AND JOHN
DOE, Individually, as members of
Lincoln County Auto Brokers, LLC., and
as Ruidoso Police Officers, LINCOLN
COUNTY AUTOBROKERS, LLC.,
RAY MERRIT, and THE VILLAGE OF
RUIDOSO ex rel RUIDOSO POLICE
DEPARTMENT, and CITY BANK, TEXAS,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiffs' Motion for Partial Summary

Judgment, filed July 18, 2009 (Doc. 66).  The Court held a hearing on November 2, 2009.  The

primary issues are (i) whether Defendants Eric Ament and David Fisk's actions on June 15, 2007

at the Lincoln County Auto Brokers constituted state action;  (ii) whether Plaintiffs Everett Brophy

and Shayla Christensen have shown that there is no genuine issue as to any material fact, and that

they are entitled to a judgment as a matter of law on their claim of unconstitutional seizure of their

personal property and Christensen's person; and (iii) whether Brophy and Christensen are entitled

to summary judgment on their procedural due-process claim.  Because the Court finds that Ament,

in his capacity as owner of Lincoln County Auto Brokers, and Fisk, in his individual capacity, were

engaged in state action sufficient to sustain liability under § 1983 and because the Plaintiffs have

demonstrated that they are entitled to summary judgment as a matter of law on their claim of unconstitutional seizure of their vehicle and Christensen's person, the Court will grant Plaintiffs' Motion for Partial Summary Judgment in part.  Because, however, there exist genuine issues of material fact regarding the notice given to Christensen and Brophy, the Court will deny Plaintiffs' Motion for Partial Summary Judgment on their due-process claim.

## FACTUAL BACKGROUND[1]

Defendant Lincoln County Auto Brokers, LLC is organized as a New Mexico limited liability company operating in Ruidoso, New Mexico.  See Deposition of Eric Ament at 20:11-13, at 3 (taken April 1, 2009), filed July 18, 2009 (Doc. 67-2 through Doc. 67-9)("Ament Depo.").  Lincoln County Auto Brokers commenced doing business as a going concern in January-March 2007.  See id. at 24:1-11.  The normal business hours of Lincoln County Auto Brokers was Monday-Friday from 9:00 a.m. to 6:30 p.m., and on Saturday from 10:00 a.m. to 3:00 p.m.  See id. at 31:19-32:2.

Ament and his wife own Lincoln County Auto Brokers.  See id. at 21:2-7.  Ament and his wife own the property where Lincoln County Auto Brokers is situated.  See id. at 15:24-16:2.  Ament, at all times material, has been the managing member of Lincoln County Auto Brokers.  See id. at 20:25-21:1.  Ament had no formal or informal training in the management and operation of a used-car business other than what he had picked up from his employees.  See id. at 44:2-6.  As a Ruidoso Police Officer, however, Ament was aware of the motor vehicle repossession laws in New

---

[1] At the hearing on this motion, Mr. J. Robert Beauvais, Brophy and Christensen's attorney, stated that there are no material facts in dispute.  See Transcript of Hearing at 5:17-24 (taken November 2, 2009)(Beauvais)("Nov. 2 Tr.").  Mr. Michael L. Danoff, Ament and Fisk's attorney, contends that there are some facts in dispute.  See Nov. 2 Tr. at 21:16-24 (Danoff).  In this factual background, the Court notes the extent to which Ament and Fisk have not disputed the facts with contrary evidence.

Mexico.  See Ament Depo. at 48:24-49:18.  Ament is trying to involve himself in the company more each day.  See Ament Depo. at 43:19-20.

Lincoln County Auto Brokers was staffed by David Fisk, John Gaffney, and a lot person named Shirley at the time of the incident with Brophy and Christensen.  See id. at 24:14-17.  The only salesmen for Lincoln County Auto Brokers were Fisk and Gaffney.  See id. at 32:19-22. Brophy and Christensen assert that  Fisk and Gaffney are designated as managers with the authority to bind Lincoln County Auto Brokers on business transactions without prior authorizations by Ament.  See id. at 27:16-28:3; id. at 51:6-14.  Ament and Fisk dispute this contention in their Response, but offer no evidence, competent or otherwise, to dispute the allegation.  See Defendants Eric Ament and David Fisk's Response to Plaintiffs' Motion for Summary Judgment at 6, filed July 31, 2009 (Doc. 68)("Response").   Accordingly, the Court will accept Brophy and Christensen's assertion as true.

Ament would stop by the Lincoln County Auto Brokers lot almost daily for a cup of coffee, regardless whether he was on duty as a Ruidoso Police Officer.  See id. at 28:4-22.  The Ruidoso Police Department placed no restrictions on Ament's outside-business activities.  See id. at 29:4-16. Ament was allowed to carry and use a personal cellular telephone while acting as an on-duty Ruidoso Police Officer.  See Ament Depo. at 29:17-30:4.  Ament did not have a Ruidoso Police Department-issued cellular telephone for use during regular business hours on June 15, 2007, but had a hand-held radio.  See id. at 30:9-16.  It was Ament's practice to take telephone calls related to Lincoln County Auto Brokers while acting as an on-duty police officer if not busy or call back when he was available.  See id. at 31:1-13.  Fisk would call Ament any time there was an issue that came up at the business that needed his attention.  See Ament Depo. at 31:1-6.

This litigation arises in the context of a retail-commercial-sales agreement executed between

Plaintiffs Everett Brophy and Shayla Christensen as purchasers, and Lincoln County Auto Brokers as vendor/seller.  An employee of Lincoln County Auto Brokers designed or prepared the contracts and other forms used in connection with Lincoln County Auto Brokers' automobile sales business.  See id. at 21:20-25.  Christensen and Brophy purchased a 2001 Honda Accord from Lincoln County Auto Brokers on April 16, 2007, at a purchase price of $11,519.00.  See Deposition of Everett Brophy at 32:5-8 (taken June 24, 2009), filed August 21, 2009 (Doc. 74-4)("Brophy Depo.");  Deposition of Shayla Christensen at 48:24-49:2 (taken June 24, 2009), filed July 18, 2009 (Doc. 67-10)("Christensen Depo.").  The financing terms of the purchase agreement required Brophy and Christensen to pay a down payment of $2,000 and make monthly payments.  See Brophy Depo. at 26:3-14.  Brophy and Christensen informed Fisk that they would pay the down payment upon receiving their tax return, which was expected a few weeks after the purchase date.  See Christensen Depo. at 38L4-10.  An in-house promissory note for the down payment was executed around June 8, 2007 and backdated to reflect April 16, 2007.  See Lincoln County Auto Brokers LLC Promissory Note, filed July 18, 2009 (Doc. 67-16)("Promisory Note");  Deposition of David Fisk at 43:2-16 (taken April 1, 2009), filed July 18, 2009 (Doc. 67-14)("Fisk Depo.").  Under the terms of the note, Brophy and Christensen were to pay $600.00 on June 15, 2007, and $1,400.00 on June 25, 2007.  See Promissory Note; Fisk Depo at 67:3-13.

The Brophy/Christensen commercial automobile-sales contract for their 2001 Honda Accord was sold on a recourse transaction to City Bank, A Texas financial institution.[2]  See Ament Depo.

---

[2] In a recourse transaction, the company selling its contract must repay the advance and fees if the customer does not pay the invoice by the recourse date.  The customer makes payments directly to the bank to which the contract has been sold and not to the selling company.  In this case, Brophy and Christensen would make payments directly to City Bank and not to Lincoln County Auto Brokers.

at 38:4-7.  Once the commercial paper was sold, Lincoln County Auto Brokers was not obligated to collect payments on behalf of the bank.  See id. at 38:8-39:1.  Lincoln County Auto Broker agreed with City Bank that the bank would not make demand on the automobile dealer until thirty days after the contract and note became delinquent.  See id. at 41:2-6.  Ament's employee, Fisk, would inform Ament when a reserve note had been called by the bank.  See id. at 41:7-9.

In addition to the purchase-contract sold to City Bank, there was a separate note with Lincoln Auto Brokers for the down payment, though Ament did not personally authorize the note.  See id. at 34:1-9.  Fisk had the authority to create promissory notes for down payments and authority to determine under which terms the note would be paid.  See Ament Depo. at 36:1-7.  Fisk also was responsible for deciding whether or not to repossess a vehicle if a promissory note went unpaid.  See Ament Depo. at 39:21-40:1.  Lincoln County Brokers did not give Brophy and Christensen any written notice of deficiency or default on the note before June 15, 2007.  See Fisk Depo. at 68:2-14.  Brophy and Christensen contend that they never offered to surrender their vehicle before the time Ament and Lincoln County Auto Brokers seized it on June 15, 2007.  See id. at 46:10-24.  Ament and Merrit dispute this contention, but offer no evidence.  Accordingly, the Court will accept Brophy and Christensen's assertion as true.

Ament personally made calls to Brophy and Christensen to encourage them to bring their outstanding note for the down payment current before June 15, 2007.  See Ament Depo. at 40:8-14.  Brophy describes that Ament informed him that he would be taken to jail for not making payments on the vehicle.  See Brophy Depo. at 64:6-8.

On June 15, 2007, Christensen obtained a money order in the amount of $200.00 to take to Lincoln County Auto Brokers as part payment due that date.  See Christensen Depo. at 52:21-53:17; id. at 127:21-128:6; id. at 133:22-134:5.  She brought her vehicle to the Lincoln County Auto

Broker's lot with the intention of having the vehicle repaired.  See Christensen Depo. at 106:2-5. As of June 15, 2007, Brophy and Christensen had made only one month's payment on the vehicle. See id. at 40:10-11.

When Christensen drove onto the Lincoln County Auto Broker's lot on June 15, 2007, an employee pulled out behind her so that she could not get out.  See id. at 53:18-54:7.  Christensen went into the office, where an employee, Dave, blocked her exit.  See id. at 56:5-10.  Feeling threatened, Christensen used the Lincoln County Auto Brokers' business telephone to call 911.  See id. at 56:12-57:10.  Christensen requested police assistance from the dispatcher.  See id. at 57:9-16. Christensen then called Brophy to inform him that she needed him to come down to the lot.  See Christensen Depo. at 57:17-58:6.

When the problem arose regarding Brophy and Christensen's vehicle, Ament received a telephone call from Fisk on his private cellular telephone.  See Ament Depo. at 47:5-11; id. at 54:7-11; Fisk Depo. at 68:2-14.  Brophy and Christensen also contend that Ament could hear her in the background and that she was upset.  See Ament Depo. at 34:12-25.  Ament and Fisk dispute these two factual assertions, but do not offer any evidence to support their contention.  Accordingly, the Court will accept Brophy and Christensen's factual assertions about what Ament knew and could hear.  Fisk called Ament because he "felt that [he] needed some authoritative representation."  See Fisk Depo. at 59:8-10.[3]  Ament was an on-duty Ruidoso Police officer on June 15, 2007 and at all times material.  See id. at 47:2-4.  At the time of the incident, Ament did not know that there was a separate agreement with Brophy and Christensen regarding paying the down payment on terms.

_____

[3] Fisk explained that he was essentially calling the police, though Ament instructed him that he needed to call the police department.  See Fisk Depo. at 59:11-21.  Fisk states he does not know why Ament showed up.  See id.

See id. at 34:1-12.[4]

Ament responded to the problem at the Lincoln County Auto Brokers' lot without the Ruidoso Police Department dispatching him and arrived before Ruidoso Police Officer Merrit was dispatched to the lot.  See Ament Depo. at 47:12-14; Christensen Depo. at 59:15-25; id. at 60:1-5; id. at 62:21-25. When he arrived at Lincoln County Auto Brokers on June 15, 2007, Ament knew the employees of Lincoln County Auto Brokers had blocked off the entrance to the Lincoln County Auto Brokers lot by using an automobile in the dealership's inventory.  See id. at 64:10-65:8. Ament used his hand-held radio to call for the dispatch of a Ruidoso Police Department officer to the Lincoln County Auto Brokers lot on June 15, 2007.  See Ament Depo. at 54:20-55:1; Christensen Depo. at 62:21-25.  Brophy and Christensen contend that, although Ament knew a uniformed Ruidoso Police Department officer had been dispatched to Lincoln County Auto Brokers, he physically traveled to the location while in uniform with the badge of an officer, while displaying a weapon, and while on a marked Ruidoso Police Department motorcycle.  See Ament Depo. at 55:25-56:7; id. at 65:16-66:19; Christensen Depo. at 63:12-24; id. at 64:6-16.  Ament and Fisk dispute the contention, but do not offer any evidence that contradicts Brophy and Christensen's factual statement.  Accordingly, the court will accept Brophy and Christensen's allegations as true. Ament never advised Christensen whether he was acting as manager or as an officer when he was at the lot on June 15, 2007.  See Ament Depo. at 57: 1-4.  He confronted Christensen, but she told Ament that she did not want to deal with him because he owned Lincoln County Auto Brokers.

---

[4] Brophy and Christensen contend that, during the telephone call that Ament received on his personal cellular telephone on June 15, 2007, he knew Christensen was at the Lincoln County Auto Broker's lot to make a payment on the in-house note for the down payment when things started escalating. They have not, however, offered any evidence to support this contention.  Accordingly, the Court will assume for the purposes of this motion that Ament did not know about the agreement.

Ament responded that he understood and that Merrit would be there soon.  See Ament Depo. at 66:15-19; id. at 58:20-22 ("When I arrived on scene, I explained to Miss Christensen, due to the relation I'm here simply to make sure that everybody is okay.").

When Merrit arrived, he confronted Christensen, and while standing behind Christensen and her vehicle, Ament heard Merrit tell Christensen that Lincoln County Auto Brokers wanted their car, and that she was going to have to leave it, or words to the effect.  See Ament Depo. at 56: 22-25; Christensen Depo. at 63:12-24; id. at 64:6-16; id. at 66:3-17; id. at 133:9-21.  Merrit instructed Christensen to remove her personal belongings from the vehicle so that the car could be returned to Ament.  See Christensen Depo. at 64:12-14.  Merrit requested that Christensen surrender the vehicle and hand over the keys.  See Christensen Depo. at 133:9-21.  Ament and Fisk contend that Christensen gave the keys to Merrit and voluntarily left.  Brophy and Christensen deny that Christensen acted voluntarily and, instead, assert that Christensen felt compelled to give the keys because Merrit was a police officer.  See id. at 133:19-21.  Fisk contends that Merrit made the decision that the vehicle was not leaving the lot, though he did not specifically hear him say that Christensen could not take the car.  See Fisk Depo. at 62:9-12.

Ament characterized the events of June 15, 2007 as a repossession.  See id. at 69:6-15.[5] Brophy and Christensen contend that Ament admitted their vehicle was not peacefully repossessed. See id. at 49:19-20.  Ament and Fisk dispute this characterization of Ament's deposition.  In his

_____

[5] Brophy and Christensen contend that, approximately two months before the incident on June 15, 2007, Ament was involved in a similar attempted repossession of a vehicle in Christensen's possession.  See id. at 57: 5-58:1.  Ament and Fisk dispute this contention; however, they do not present any evidence to show that there is a dispute.  Accordingly, the Court will accept Brophy and Christensen's statement as true.  In that instance, Ament, acting as a Ruidoso police officer, advised the person attempting to repossess the vehicle that he could not do so without the proper paperwork or court order.  See id. at 60:17-61:6.

deposition, Ament explained that his understanding of a peaceful repossession is that, "when things start getting out of control, the car goes with -- everything ceases, the car moves on with whoever the owner or whoever the car's -- registered owner of the car is." Id. at 49:9-12.  He admits that is not what happened on June 15, 2007.  See id. at 49:19-20.  Though Ament and Fisk dispute Brophy and Christensen's characterization, they have not offered any evidence to support their position. Accordingly, the Court accepts Brophy and Christensen's characterization of Ament's admission.

Fisk prepared and signed a MVD form 10012, Affidavit of Repossession, on the Brophy/Christensen vehicle on July 15, 2007, certifying that all steps required by law in connection with the repossession, including proper notice of same, had been duly and properly completed, and that the information on the affidavit was true and correct.  See Affidavit of Repossession, filed July 18, 2009 (Doc. 67-17).  Brophy admits that he could have returned to the lot the afternoon of June 15, 2007, paid the $600 payment, and reclaimed the vehicle, though he chose not to do so.  See Brophy Depo. at 66:12-19.  Lincoln County Auto Brokers sent out a statutory notice of intent to sell Brophy and Christensen's vehicle, which was returned for improper address.  See Ament Depo. at 76:2-19.

Brophy and Christensen make several factual allegations that Ament and Fisk dispute: (i) the vehicle was never offered for sale at a public or private auction; see Ament Depo. at 77:25-78:3; (ii) the reason that the vehicle was not sold was that Ament had loaned the car to his children's nanny, who wrecked it, see Ament Depo. at 78:2-14; (iii) Ament showed up in police uniform and insisted on getting his car back and told Christensen to get all her stuff out of her car, see Christensen Depo. at 59:15-60:5; and (iv) Ament was the only uniformed police officer talking to Christensen for approximately ten minutes until Merrit arrived, see Christensen Depo. at 62:21-25. Ament and Fisk do not, however, offer any additional evidence to show how these facts are in

dispute.  Accordingly, the Court will accept Brophy and Christensen's factual assertions as true.

## PROCEDURAL BACKGROUND

The Court effectively bifurcated the proceedings because of an arbitration provision that the retail-purchase agreement contained.  The arbitration proceeding will decide the civil-rights claim against Lincoln County Auto Brokers, because Lincoln County Auto Brokers is a party to the arbitration agreement.  Defendants Village of Ruidoso, Merrit and Ament, as Ruidoso Police Department Officers, in their official capacities, resolved the claims against them by settlement of those claims.

Remaining before the Court are the constitutional claims against Ament and Fisk, individually, for unlawful seizure of person and property and seizure without due process, pursuant to 42 U.S.C. § 1983 and § 1985.  See Memorandum Brief in Support of Motion for Partial Summary Judgment at 2,  filed July 18, 2009 (Doc. 67)("Memo.")("Remaining before the court are the civil rights and conspiracy claims against Eric Ament and David Fisk, individually.").[6]  Brophy and

---

[6] The parties also submitted a Pretrial Order to the Court on November 5, 2009, which states that the remaining affirmative relief Brophy and Christensen seek is "damages for constitutional violation and compensatory damages pursuant to 42 U.S.C. § 1983 and § 1985; attorneys fees and costs."  Pretrial Order at 3, filed November 5, 2009 (Doc. 94).  Mr. Beauvais, however, stated in the pretrial conference before the Court on November 6, 2009, that state claims still remain:

> BEAUVAIS:  It struck me, and there are also are some pending state claims that weren't discussed at all and hinged in large measure on the state action question.  It seems to me we could do one of two things.
>
> THE COURT:  I thought there were only -- I thought the briefing said that there was only the 1983 claim and the conspiracy claim left in this case.  Am I wrong?
>
> MR. BEAUVAIS:  In my opinion, Your Honor, there's still -- there still are state tort claims against Mr. Ament, that there's -- there's the wrongful repossession claim against Ament in his individual capacity that I believe still remain.
>
> THE COURT:  All right.  If you go back and look at your briefing, though, you told

Christensen move the Court for a partial summary judgment.

Brophy and Christensen contend that under the public-function test, the nexus test, the symbiotic-relationship test, and the joint action test,[7] Ament and Fisk should be considered state actors for the purposes of 42 U.S.C. § 1983. <u>See</u> Memo. at 15. Brophy and Christensen further contend that Ament was acting in a dual capacity as both police officer and as the

---

me there were two claims left. Now that may not be true but you told me that we were down to just two issues in this case.

MR. BEAUVAIS: I don't believe that I did, Your Honor. Mine was specifically styled as partial, and I may have, and if I did, I misspoke, but I did believe that there -- or I do believe that there are pendent claims that in large measure hinged on this state action question as far as the federal claims but I think that the pendent state claims because you only -- you only dismissed those against the LLC, that those could still be argued against particularly the wrongful repossession is the one I'm concerned about against Ament because we're certainly alleging intentional conduct.

* * * *

MR. DANOFF: Also I had a query I was like [Your Honor,] I read the pretrial order and I thought that the only issues before the Court was the 1983 action, 1985 action, and that was identified in the issues sought in this action. So I'm going to need to get that clarified, too, as well, Your Honor.

Transcript of Pretrial Conference Hearing at 26:11-27:10 (taken November 6, 2009)(Beauvais, Court); <u>id.</u> at 34:21-25 (Danoff)("Nov. 6 Tr."). As the Pretrial Order was filed the day before Mr. Beauvais made these statements, the Court is unclear as to the status of Brophy and Christensen's remaining claims. For the purposes of deciding this motion for partial summary judgment, however, the Court only will address the claims on which Brophy and Christensen moved for summary judgment and which the parties briefed, specifically unlawful seizure and deprivation of due process.

[7] The Plaintiffs assert that the determination of state action occurs using five tests they refer to as the nexus test, interdependence test, willful-participant test, symbolic-relationship test, and exercise-of-traditional-powers test. <u>See</u> Memo. at 15. They do not, however, specifically explain how they have demonstrated state action by Ament and Fisk in their capacity as private individuals under any of these tests. The Court will refer to the tests as the Supreme Court of the United States and the United States Court of Appeals for the Tenth Circuit have articulated them, <u>see</u>, <u>e.g.</u>, <u>Johnson v. Rodriguez (Orozco)</u>, 293 F.3d 1196, 1202 (10th Cir. 2002), rather than as the Plaintiffs have stated them.

creditor/repossessor when he responded to a call on his private cellular phone while on duty and responded to the Lincoln County Auto Brokers' location.  See id. at 16.  Brophy and Christensen contend that Ament and Fisk violated their due-process rights by seizing Christensen's person and property without process.  See id. at 18.  Ament and Fisk argue that Brophy and Christensen have not shown and cannot prove that the Ruidoso Police Department and Lincoln County Auto Brokers shared a common, unconstitutional goal, thus satisfying the joint-action test for state action.  See Defendants Eric Ament and David Fisk's Response to Plaintiffs' Motion for Summary Judgment at 13, filed July 31, 2009 (Doc. 68).  Ament and Fisk do not offer argument as to why their actions do not constitute state action under the public-function test, the nexus test, or the symbiotic relationship test.  Neither Brophy and Christensen nor Ament and Fisk put forth argument addressing whether state action is a question of law or fact.

The Court held a pretrial conference with the parties on November 6, 2009.  In the conference, the Court informed the parties that the factual record before the Court was insufficient to make the legal determination on state action.  See Nov. 6 Tr. at 3:10-17.[8]  The Court relied upon the analysis in Gilmore v. City of Montgomery, 417 U.S. 556 (1974), where the Supreme Court stated that the factual record before it "[did] not contain sufficient facts upon which to predicate legal judgments of this kind."  Id. at 570.  The Court indicated it needed a hearing or trial to create a more robust factual record before deciding this issue as a matter of law. After the hearing, however, when the Court worked to finalize the opinion and order, it realized that the parties had not cited and discussed in their briefs all the facts that are in the record attached to the briefs.  After careful review, the relevant facts and arguments in the attachments and record, the Court decided

_____

[8] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

it was not necessary for the Court to hold a trial or hearing to make an informed decision.  The

Court, thus, took considerable time following the pretrial conference to review the factual record

independently and found that there were several significant facts that had not been brought to the

Court's specific attention in the briefings.  With the aid of these additional facts, the Court was able

to reach a conclusion on the state-action issue.  Thus, the Court will reverse the decision that it

expressed during the pretrial conference and will make a legal determination on the state-action

issue in this opinion.

## THE STANDARD AND LAW FOR DECIDING MOTIONS FOR SUMMARY JUDGMENT

Summary judgment should be granted "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c).  The movant bears the initial burden of "show[ing] that there is an absence of

evidence to support the nonmoving party's case."  Bacchus Indus., Inc. v. Arvin Indus., Inc., 939

F.2d 887, 891 (10th Cir. 1991)(internal quotation marks omitted).  Once the movant meets his or

her burden, the burden shifts to the non-moving party to set forth specific facts showing there is a

genuine issue for trial.  See Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256 (1986).

When considering a motion for summary judgment, the court must consider all of the

evidence in the light most favorable to the non-moving party.  See Jones v. Unisys Corp., 54 F.3d

624, 628 (10th Cir. 1995).  Rule 56 provides that "an opposing party may not rely merely on

allegations or denials in its own pleadings; rather, its response must -- by affidavits or as otherwise

provided in this rule -- set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P.

56(e)(2).

The existence of a mere scintilla of evidence will not avoid summary judgment.  See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993).  There must be sufficient evidence on which the fact-finder could reasonably find for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## LAW REGARDING STATE ACTION AND CIVIL-RIGHTS CLAIMS

The Supreme Court has stated that it is a judicial obligation to not only "preserve an area of individual freedom by limiting the reach of federal law and avoid the imposition of responsibility on a State for conduct it could not control, but also to assure that constitutional standards are invoked when it can be said that the State is responsible for the specific conduct of which the plaintiff complains."  Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n, 531 U.S. 288, 295 (internal quotations and citations omitted).  The Fifth and Fourteenth Amendment rights at issue secure protection only against infringement through state action.  See, e.g., Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 156 (1978)("[M]ost rights secured by the Constitution are protected only against infringement by governments.").  Under some circumstances, however, the conduct of private parties may be deemed to be state action when the "conduct allegedly causing the deprivation of a federal right may be fairly attributable to the State."  Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982).  Whether the conduct may in fact be "fairly attributed" to the state requires a two-part inquiry.  "First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible."  Id.  "Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor."  Id.  See West v. Atkins, 487 U.S. 42, 48 (1988)(explaining

that, to state a claim under § 1983, the plaintiff must show: (i) deprivation of a right that the federal constitution or federal laws secure; and (ii) that a person acting under color of state law caused the deprivation).

The Supreme Court of the United States in <u>Lugar v. Edmondson Oil Co., Inc.</u> explained that the two prongs merge when the claim is "directed against a party whose official character is such as to lend the weight of the State to his decisions," whereas they remain distinct when analyzing the conduct of private parties. 457 U.S. at 937.  The first prong of the <u>Lugar</u> test -- that the deprivation of a right is attributable to the state -- is satisfied when "the authority of state officials . . . put the weight of the State behind [the d]efendant's private decision[.]" <u>Id.</u> at 940.  The Supreme Court in <u>Lugar v. Edmondson Oil Co., Inc.</u> further instructed that the second prong, identification of a defendant as a state actor, may arise "because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the state." <u>Id.</u> at 937.

In <u>Lugar v. Edmondson Oil Co., Inc.</u>, the Supreme Court determined that the plaintiff's allegation that private conduct unlawful under state law deprived the plaintiff of his property without due process failed to state a claim under § 1983. <u>See</u> 457 U.S. at 940.  The Supreme Court also held that the plaintiff's claim alleging that the private parties had invoked a state statute maliciously or without valid grounds did not give rise to state action. <u>See id.</u>  Instead, that claim amounted to nothing more than the private misuse or abuse of a state statute. <u>See id.</u> at 940-41.

For a private individual to be acting under color of state law, the deprivation of a federal right "must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible," and "the party charged with the deprivation must be a person who may fairly be said to be a state actor . . . because

-15-

he is a state official, because he has acted together with or has obtained significant aid from state

officials, or because his conduct is otherwise chargeable to the State." Lugar v. Edmondson Oil Co.,

457 U.S. 922, 937 (1982).

> Congress did not, in using the term "under the color of state law," intend to subject
> private citizens, acting as private citizens, to a federal lawsuit whenever they seek
> to initiate a prosecution or seek a remedy involving the judicial system.  To hold
> otherwise would significantly disregard one purpose of the state action requirement,
> which is to "preserve[] an area of individual freedom by limiting the reach of federal
> law and federal judicial power."  Lugar, 457 U.S. at 936.  Instead, in enacting §
> 1983, Congress intended to provide a federal cause of action primarily when the
> actions of private individuals are undertaken with state authority.  See id. at 934.
> Thus, absent more, causing the state, or an arm of the state, to initiate a prosecution
> or serve process is insufficient to give rise to state action.

How v. City of Baxter Springs, 217 Fed. Appx. 787, 793 (10th Cir. 2007)(unpublished).

## 1.    Whether There is State Action by Private Actors is a Legal Determination Made by the Court.

The Court of Appeals for the Tenth Circuit has described the determination of state action

as "particularly fact-sensitive, so the circumstances must be examined in their totality."  Marcus v.

McCollum, 394 F.3d 813, 819 (10th Cir. 2004).  According to the Tenth Circuit:  "The Supreme

Court has counseled us that the state action inquiry, although a legal determination to be made by

the court, [see Gilmore v. City of Montgomery, 417 U.S. 556, 570 (1974),] requires the 'sifting [of]

facts and weighing [of] evidence."  Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1271 (10th Cir.

1989)(quoting Burton v. Wilmington Parking Auth., 365 U.S. 715, 722 (1961)).  In Gilmore v. City

of Montgomery, 417 U.S. 556 (1974), the Supreme Court found that, though it was the Court's role

to determine whether the use of zoos, museums, parks, and other recreational facilities by private

school groups and private non-school organizations "involved government so directly in the actions

of those users as to warrant court intervention on constitutional grounds[,]" the factual record before

the Supreme Court "[did] not contain sufficient facts upon which to predicate legal judgments of this

kind."  417 U.S. at 570.

On the other hand, leaving the determination of state action to the jury has shown to be ill-advised.  The cases in which the acts of private entities have been held to constitute state action or to be under color of law, and cases in which they have not, tend to be distinguished "by fine shadings in the sometimes complex interrelationships that develop between the state and private bodies."  Adams v. Vandermark, 787 F.2d 588, 1986 U.S. App. LEXIS 19390, at *8 (6th Cir. 1986)(unpublished).  In Adams v. Vandermark, the United States Court of Appeals for the Sixth Circuit reviewed a jury instruction from the United States District Court for the Eastern District of Michigan, instructing the jury on when to find state action.  The Sixth Circuit found that the few words that were given to the jury on when to find state action "gave the jury little to guide it in making its determination on this crucial element of the claim for relief."  1986 U.S. App. LEXIS 19390, at *7.  The Sixth Circuit noted that the application of the symbiotic-relationship test and the joint-relationship test are "very difficult and complex questions," and, "[t]o the extent a jury is to decide upon the proper factual predicates for this essentially legal determination, it must be given instructions that are clear, precise and informative as to the factors involved and the factual issues to be determined."  1986 U.S. App. LEXIS 19390, at **7-8.  The Sixth Circuit found that the defendants were entitled to a new trial because the jury was given no direction that could have enabled it to make the necessary underlying factual determination regarding state action.

**2.      Tests for Determining State Action by a Private Party.**

The Supreme Court has articulated four different tests for courts to use in determining whether conduct by an otherwise private party is state action: (i) the public-function test; (ii) the nexus test; (iii) the symbiotic-relationship test; and (iv) the joint-action test.  See Johnson v. Rodrigues (Orozco), 293 F.3d at 1202-1203 (reviewing the various tests); Gallagher v. Neil Young

Freedom Concert, 49 F.3d 1442, 1447 (10th Cir. 1995)(noting that "[a]pplication of the state action doctrine has been characterized as one of the more slippery and troublesome areas of civil rights litigation.")(internal quotations omitted).

### a. Public-Function Test.

Under the public-function test, a court determines whether a private party has exercised "powers traditionally exclusively reserved to the State." Jackson v. Metro. Edison Co., 419 U.S. 345, 352 (1974). The public-function test is difficult to satisfy, because while many functions may be traditionally governmental, few are "exclusively" governmental functions, as the test requires. See Gallagher v. Neil Young Freedom Concert, 49 F.3d at 1456. The courts have found exclusive government functions to include holding elections, performing necessary municipal functions, and running a nursing facility. See Johnson v. Rodrigues (Orozco), 293 F.3d at 1203.

### b. Nexus Test.

Under the nexus test, state action is present if the state has ordered the private conduct, or "exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." Blum v. Yaretsky, 457 U.S. 991, 993 (1982). A court determines under the nexus test whether there is a sufficiently close nexus between the state and the challenged conduct, such that the conduct "may be fairly treated as that of the state itself." Jackson v. Metro. Edison Co., 419 U.S. at 351. "Private use of state-sanctioned private remedies or procedures does not rise to the level of state action. . . . But when private parties make use of state procedures with the overt, significant assistance of state officials, state action may be found." Tulsa Professional Collection Servs, Inc. v. Pope, 485 U.S. 478, 486 (1988)(internal citations omitted).

-18-

### c.    Symbiotic-Relationship Test.

Under the symbiotic-relationship test, state action is present if the state "has so far insinuated itself into a position of interdependence" with a private party that "it must be recognized as a joint participant in the challenged activity." Burton v. Wilmington Parking Authority, 365 U.S. 715, 725 (1961). "[E]xtensive regulation, receipt of substantial state funds, and the performance of important public functions do not necessarily establish the kind of symbiotic relationship between the [state] and a private [party] that is required for state action." Gallagher v. Neil Young Freedom Concert, 49 F.3d at 1451. "The applicable decisions clearly establish no bright-line rule for determining whether a symbiotic relationship exists between a government agency and a private entity. Questions as to how far the state has insinuated itself into the operations of a particular private entity and when, if ever, the operations of a private entity become indispensable to the state are matters of degree." Id. at 1452.

### d.    Joint-Action Test.

State action exists under the joint-action test if the private party is a "willful participant in joint action with the State or its agents." Dennis v. Sparks, 449 U.S. 24, 27 (1980)(quoting United States v. Price, 383 U.S. 787, 794 (1966)). Courts look to "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." Gallagher v. Neil Young Freedom Concert, 49 F.3d at 1453. "[I]f there is a substantial degree of cooperative action between state and private officials . . . or if there is overt and significant state participation, in carrying out the deprivation of the plaintiff's constitutional rights, state action is present." Id. at 1454 (internal quotations and citations omitted). Joint participation can also take the form of a conspiracy between public and private actors; in such cases, the plaintiff must show that the public and private actors shared a common, unconstitutional goal. See Sigmon v. CommunityCare HMO,

Inc., 234 F.3d 1121, 1126 (10th Cir. 2000).  Even a conspiracy claim requires a sufficient level of state involvement to constitute joint participation in the unconstitutional actions.  See Soldal v. Cook County, 506 U.S. 56, 60 n.6 (1992).  The Tenth Circuit has previously dismissed constitutional claims against a private individual where the plaintiff did not give specific facts showing a conspiracy evidencing state action.   See Martinez v. Winner, 771 F.2d 424, 445 (10th Cir. 1985)("Beyond the bare conclusory allegation that [the defendant], a private citizen, conspired with the other defendants to deprive plaintiff of his constitutional and civil rights, no facts are stated indicating that [the defendant] did anything . . .").

In Gallagher v. Neil Young Freedom Concert, the Tenth Circuit surveyed several instances in which courts have found action "under color of state law" where governmental and private parties have acted together in joint-action:

> We have applied the joint action test in several cases involving allegations that private citizens acted in concert with police officers in making arrests. In both Carey v. Continental Airlines Inc., 823 F.2d 1402 (10th Cir 1987), and Lee v. Town of Estes Park, 820 F.2d 1112 (10th Cir. 1987), we held that citizens who made complaints to police officers that resulted in arrests were not state actors. We found nothing in the record in either case from which we could infer that the allegedly unconstitutional arrests "resulted from any concerted action, whether conspiracy, prearranged plan, customary procedure, or policy that substituted the judgment of a private party for that of the police or allowed a private party to exercise state power." Carey, 823 F.2d at 1404. In both cases, the record indicated that the police officers had made an independent decision to make the challenged arrest.  In contrast, in Lusby v. T.G. & Y. Stores, Inc., 749 F.2d 1423, 1429 (10th Cir. 1984), cert. denied, 474 U.S. 818 (1985), we concluded that a store security guard who reported a suspected shoplifter to the police was a state actor.  We noted that the officer that made the arrest did not make an independent investigation but relied on the judgment of the security guard.  In Coleman v. Turpen, 697 F.2d 1341 (10th Cir. 1982) (per curiam), we applied the joint action test by focusing on the manner in which the alleged constitutional deprivation was carried out. There, the plaintiff challenged the seizure and sale of his property and named as defendants not only state officials but also the wrecking company that towed his truck and subsequently sold it. We found the company to be a state actor because it had "jointly participated in seizing the truck by towing it away" and because the company's sale of the plaintiff's property was "an integral part of the deprivation." Id. at 1345.

49 F.3d at 1453-56.  The Tenth Circuit noted that, "just as with the other tests for state action, the mere acquiescence of a state official in the actions of a private party is not sufficient."  Id. at 1453. The Tenth Circuit found that the joint-action test can be satisfied where police are involved in cooperative action with a private party when "the police have substantially assisted in the allegedly wrongful conduct."  Id. at 1455.  Joint participation typically arises when the authorities agree to facilitate unconstitutional acts by a private party through affirmative action .  See Soldal v. Cook County, 506 U.S. 56, 60 n. 4 (1992).

**3.      The Influence of Police Involvement on Private Action as State Action.**

The Tenth Circuit has found that the involvement of the police does not necessarily convert a defendant's abuse of state law into conduct attributable to the state for purposes of § 1983 liability. See Yanaki v. Iomed, Inc., 415 F.3d 1204, 1210 (10th Cir. 2005)(citing Winterland Concessions Co. v. Trela, 735 F.2d 257, 262 (6th Cir. 1984); Taylor v. Gilmartin, 686 F.2d 1346, 1348-49, 1355 n.3 (10th Cir. 1982); Torres v. First State Bank of Sierra County, 588 F.2d 1322, 1327 (10th Cir. 1978)). In Yanaki v. Iomed, Inc., the plaintiffs argued that the involvement of the police acting in concert with the defendants in the search of the plaintiffs' residence converted the defendants' actions into conduct attributable to the state for the purposes of § 1983 liability.  See 415 F.3d at 1209-10.  The Tenth Circuit held that the plaintiffs "fail[ed] to satisfy the first part of the [Lugar] color of law test because the conduct that [p]laintiffs complain[ed] deprived them of their constitutional rights was caused by and [could] only be attributed to the private [d]efendants."  415 F.3d at 1210.  The Tenth Circuit, therefore, found it unnecessary to address whether the private defendants were state actors. See id.  Additionally, merely following a procedure established by state law does not transform a private party's activity into state action.  See Scott v. Hern, 216 F.3d 897, 906-07 (10th Cir. 2000); Kirksey v. Theilig, 351 F. Supp. 727, 733 (D. Colo. 1972)(holding that self-help repossession of an

automobile by a private party is not action under color of state law).

**LAW REGARDING UNLAWFUL SEIZURE OF PERSON AND PROPERTY**

The Fourth Amendment, made applicable to state actors by the Fourteenth Amendment, provides in pertinent part that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."  U.S. Const. amend. IV.  See Soldal v. Cook County, 506 U.S. 56, 61 (1992).

The Supreme Court has found "a person has been seized within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980).  However, "in situations where the individual could not or would not want to leave, even absent police presence, the appropriate inquiry is whether a reasonable person would feel free to decline the officer's requests."  Florida v. Bostick, 501 U.S. 429, 436 (1991).  The Tenth Circuit has stated:

> In situations where the individual could not or would not wish to leave, even absent the police presence, "the appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." Florida v. Bostick, 501 U.S. 429, 436 . . . (1991). Circumstances that indicate a seizure include, "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled."  [United States v.] Mendenhall, 446 U.S. [544,] 554 . . . [(1980)]; [United States v.] Maez, 872 F.2d [1444,] 1450 [(1989)].

United States v. Reeves, 524 F.3d 1161, 1167 (2008).

Examples of circumstances that might indicate a seizure of a person include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.  See Florida v. Royer, 460 U.S. 491, 497 (1983).

"A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." United States v. Jacobsen, 466 U.S. 109, 113 (1984). The Supreme Court of the United States has stated that "our cases unmistakably hold that the [Fourth] Amendment protects property as well as privacy." Soldal v. Cook County, 506 U.S. at 63.  The Supreme Court has rejected the view that the Fourth Amendment protects against unreasonable seizures of property only where privacy or liberty is also implicated. Soldal v. Cook County, 506 U.S. at 65.  Additionally, seizures of property are subject to Fourth Amendment scrutiny even where no search within the meaning of the Amendment has taken place. See Soldal v. Cook County, at 68 (citing United States v. Jacobsen, 466 U.S. at 120-125; United States v. Place, 462 U.S. 696, 706-07 (1983); Cardwell v. Lewis, 417 U.S. 583, 588-89 (1974)).  For example, in Soldal v. Cook County, the Supreme Court held that the defendants, acting under color of state law, unlawfully seized the plaintiffs' trailer home when they physically tore it from its foundation and towed it to another lot.  See 506 U.S. at 72.  In Penberth v. Krajnak, No. 08-1734, 2009 U.S. App. LEXIS 22350 (3d Cir. Oct. 9, 2009), the United States Court of Appeals for the Third Circuit upheld the district court's dismissal of plaintiff's § 1983 claim for unlawful seizure of his car by the police in violation of the Fourth Amendment because the plaintiff voluntarily brought his car to the police with the knowledge that it would be taken from him.  See id., at *4.  In Bins v. Artison, 721 F. Supp. 1034 (E.D. Wis. 1989), after a bench trial, the district judge held that the defendants, a towing service and owner, were state actors operating as agents of the county and had unlawfully seized the plaintiff's race car and sold it.  See id. at 1036. The judge awarded damages and attorneys fees to the plaintiff.  See id. at 1038.

## DUE-PROCESS CLAIMS AND REPOSSESSION

The straightforward way for a plaintiff to mount a challenge under section 1983 to an

eviction or repossession or other deprivation of property is by alleging that he or she was deprived

of his or her property without due process of law.  The Supreme Court sets forth three due-process

claims that may be brought under § 1983:

> [First,] a plaintiff may bring suit under § 1983 for state officials' violation of his
> rights to, e.g., freedom of speech or freedom from unreasonable searches and
> seizures. Second, the Due Process Clause contains a substantive component that bars
> certain arbitrary, wrongful government actions "regardless of the fairness of the
> procedures used to implement them."  Daniels v. Williams, 474 U.S. [327,] 331
> [(1986)].  As to these two types of claims, the constitutional violation actionable
> under § 1983 is complete even when the wrongful action is taken.  Id. at 338.  A plaintiff,
> under Monroe v. Pape, may invoke § 1983 regardless of any state-tort remedy that
> might be available to compensate him for the deprivation of these rights.  The Due
> Process Clause also encompasses a third type of protection, a guarantee of fair
> procedure. A § 1983 action may be brought for a violation of procedural due process,
> but here the existence of state remedies is relevant in a special sense.  In procedural
> due process claims, the deprivation by state action of a constitutionally protected
> interest in "life, liberty, or property" is not in itself unconstitutional; what is
> unconstitutional is the deprivation of such an interest without due process of law .
> . . . [T]o determine whether a constitutional violation has occurred, it is necessary to
> ask what process the State provided, and whether it was constitutionally adequate.
> This inquiry would examine the procedural safeguards built into the statutory or
> administrative procedure of effecting the deprivation, and any remedies for
> erroneous deprivations provided by statute or tort law.

Zinermon v. Burch, 494 U.S. 113, 125 (1990).

The Tenth Circuit engages in a two-step inquiry in determining whether an individual's

procedural due process rights were violated: (i) whether the individual possessed a property interest

to which due process protection was applicable; and (ii) whether the individual was afforded an

appropriate level of process.  See Camuglia v. City of Albuquerque, 448 F.3d 1214, 1219 (10th Cir.

2006)(citing Clark v. City of Draper, 168 F.3d 1185, 1189 (10th Cir. 1999)).  The appropriate level

of process is typically some sort of hearing before the government acts to impair the individual's

interest, "although the hearing need not necessarily provide all, or even most, of the protections

afforded by a trial."  See id. (citing Mathews v. Eldridge, 424 U.S. 319, 335 (1976)(the type of

-24-

hearing required depends on (i) the nature of the private interest at stake; (ii) the risk of erroneous deprivation given the procedures already guaranteed, and whether additional procedural safeguards would prove valuable; and (iii) the government's interest, and the burdens that additional procedures might impose)).

The Supreme Court has held that, to satisfy constitutional due-process requirements, the State must give notice and the opportunity to be heard.  See, e.g., Cleveland Board of Education v. Loudermill, 470 U.S. 532, 542 (1985)("The root requirement of the Due Process Clause is that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest").  Procedural due process requires notice and a pre-deprivation hearing before property interests are negatively affected by governmental actors.  See Fuentes v. Shevin, 407 U.S. 67, 80-82 (1972).  "A party cannot create a due process claim by ignoring established procedures."  Santana v. City of Tulsa, 359 F.3d 1241, 1244 (10th Cir. 2004).  "The availability of recourse to a constitutionally sufficient administrative procedure satisfies due process requirements if the complainant merely declines or fails to take advantage of the administrative procedure."  Id. (citing Dusanek v. Hannon, 677 F.2d 538, 542-43 (7th Cir. 1982)).

"[I]f satisfactory state procedures are provided in a procedural due process case, then no constitutional deprivation has occurred despite the injury [to a compensable property right]."  Hudson v. Palmer, 468 U.S. 517, 533 (1984).  "[A]s long as reasonably prompt post-deprivation process is made available which allows the owner an opportunity to show cause why his property should be returned . . .  no compensable constitutional tort occurred by reason of the vehicle's initial impoundment and/or short-term custodial detention."  Ross v. Duggan, 402 F.3d 575, 583 n. 4 (6th Cir. 2004).

Because motor vehicles have been found to be "necessaries for ordinary, day-to-day living"

in American society, see, e.g., Adams v. Egley, 338 F. Supp. 614, 621 (S.D. Cal. 1972), the

impoundment of one's automobile may constitute a "grievous loss," Graff v. Nicholl, 370 F. Supp.

974, 981 (N.D. Ill. 1974)(quoting Goldberg v. Kelly, 397 U.S. 254, 263 (1970)).  "Thus, before a

state or local government may so interrupt its use, the owner is entitled to due process." Graff v.

Nicholl, 370 F. Supp. at 981.

## ANALYSIS

Before the Court may grant a motion for summary judgment, there must be (i) no genuine

issues of material fact and (ii) the movant must be entitled to judgment as a matter of law.  See

Poller v. Columbia Broad. Sys., 368 U.S. 464, 467 (1962); Fed. R. Civ. P. 56(c).  The ultimate

question now before the Court is whether the conduct of Ament and Fisk, as private individuals,

which allegedly caused a deprivation of a federal right,  is "fairly attributable to the [s]tate." Lugar

v. Edmondson Oil Co. Inc., 457 U.S. at 937.  This issue is a legal determination that the Court must

make.  See Phelps v. Wichita Eagle-Beacon, 886 F.2d at 1271 (stating "the state action inquiry,

although a legal determination to be made by the court, requires the sifting [of] facts and weighing

[of] evidence")(internal quotation omitted).  In deciding whether conduct of the private parties

amounts to government action, the Court engages in a fact-sensitive inquiry, examining the

circumstances in their totality.  See Marcus v. McCollum, 394 F.3d at 819.  If there is state action

by Ament and Fisk, in their individual capacities, then the Court may assess whether Brophy and

Christensen have shown that there are no genuine issues of material fact, and whether they are

entitled to judgment as a matter of law.  Because there was joint action between Fisk, and Ament

and Merrit, as officers, and because there was joint action between Ament[9] and Fisk, as private

_____

[9] Ament wears two hats in this case, and there is a genuine issue of material fact that the jury
must decide whether, during the June 15, 2007 incident, Ament was acting solely within the scope

actors, with the Ruidoso police, as state actors, the Court finds that Ament and Fisk were engaged in state action sufficient to sustain liability for constitutional violations under § 1983.  The Court will find, therefore, that viewing the facts in the light most favorable to the non-moving party, Ament and Fisk engaged in actions which constituted an unlawful seizure of Brophy and Christensen's vehicle and Christensen's person, and therefore will grant the motion for summary judgment on that claim.  The Court finds, however, that there are genuine issues of material fact whether Ament and Fisk deprived Brophy and Christensen due process in conducting the seizure, and therefore will deny the motion for summary judgment on that claim.

## I.    BROPHY AND CHRISTENSEN HAVE NOT DEMONSTRATED THAT THE PRESENCE OF POLICE ALONE ESTABLISHES THAT THE REPOSSESSION BY AMENT AND FISK, AS PRIVATE ACTORS, CONSTITUTED STATE ACTION.

Brophy and Christensen bear the burden of showing that the undisputed material facts demonstrate that they are entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  In their motion, they make the conclusory statement that, "[u]nder the nexus, interdependence, willful participant, symbolic relationship, and exercise of traditional powers test, Ament and Fisk participated as private actors with the state actor, Officer Merrit, sufficient to find state action for purposes of 42 U.S.C. § 1983 liability."  Motion at 15.  They did not articulate how the facts

---

of his role as police officer or if he was acting as owner of Lincoln County Auto Brokers.  Whether Ament was acting on June 15, 2007 solely as a police officer or in a dual capacity as both officer and owner of Lincoln County Auto Brokers is a material fact currently in dispute.  Ament has filed a separate motion for summary judgment on that factual dispute, and the Court will fully address the issue in a separate opinion.  If a jury finds that Ament was acting in whole or in part as owner of Lincoln County Auto Brokers during the repossession on June 15, 2007, then the Court's legal determination on state action in this opinion will be determinative whether Brophy and Christensen have a valid claim for liability against Ament under § 1983. For the purpose of discussing state action, the Court will treat him as two separate persons.  The Ament wearing his police hat has settled.  Accordingly, the Ament who is owner of Lincoln County Auto Brokers is the only Ament currently before the Court on the determination whether there was state action.

demonstrate state action under any of the tests.

During the hearing on the motion, they argued that as a matter of law, when a police officer is injected into a repossession, it violates a person's due process rights. See Nov. 2 Tr. at 13:15-19 (Beavais). They rely on the Supreme Court of New Mexico's holding in Wasiner v. Jones, 107 N.M. 260, 755 P.2d 598 (1988), which held that "[a]ny time a law enforcement officer accompanies a repossessor and makes his official presence known to the defaulting party at or near the attempted self-help repossession, that officer has transgressed the line of benign attendance." 107 N.M. at 265, 755 P.2d at 603. The Supreme Court of New Mexico stated: "the imprimatur of the state evinced by the presence of a law enforcement official, without judicial process, removes a repossession from the ambit of Section 55-9-503 and places it among conduct proscribed by either the fifth or fourteenth amendments." 107 N.M. at 265, 755 P.2d at 602. The Court, however, must also be cognizant that the Tenth Circuit has held that the involvement of the police does not necessarily convert a defendant's abuse of state law into conduct attributable to the state for purposes of § 1983 liability. See Yanaki v. Iomed, Inc., 415 F.3d at 1210 (10th Cir. 2005). The Court, therefore, will not apply a bright-line rule, as Brophy and Christensen suggest, and find as a matter of law that Ament and Fisk were state actors solely because there were police officers involved in the repossession of their vehicle.

## II.   AMENT'S AND FISK'S ACTIONS CONSTITUTE STATE ACTION UNDER THE COLOR OF LAW.

The Fourteenth Amendment "erects no shield against merely private conduct, however discriminatory or wrongful." Shelley v. Kraemer, 334 U.S. 1, 13 (1948). See Jackson v. Metropolitan Edison Co., 419 U.S. 345 (1974); Adickes v. S. H. Kress & Co., 398 U.S. 144 (1970). For the Court to attribute Ament's and Fisk's actions to the state, the facts must support a finding

of state action under the two-prong inquiry that the Supreme Court set forth in <u>Lugar v. Edmondson Oil Co., Inc.</u>  The facts must show: (i) the deprivation was caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible; and (ii) Ament and Fisk were state actors.  <u>See</u> <u>Lugar v. Edmondson Oil Co., Inc.</u>, 457 U.S. at 937.  Because Ament and Fisk have been sued in their private individual capacities, the two prongs remain distinct when analyzing their conduct.  <u>See</u> <u>id.</u> at 940.  Brophy and Christensen cite to <u>Marcus v. McCollum</u>, which addressed whether there was state action when police officers aided in the repossession of the plaintiff's automobile.  The Tenth Circuit found in <u>Marcus v. McCollum</u> that officers who actively aid in a private party's repossession of the plaintiff's vehicle amounts to state action for purposes of a § 1983 claim.  <u>See</u> 394 F.3d at 822.  The Tenth Circuit, however, did not address whether the private individual's actions could be classified as state action, <u>see</u> 394 F.3d at 817 n. 3 (stating "plaintiffs' briefs do not contest the district court's *sua sponte* entry of summary judgment in favor of Mr. McCollum.  We thus do not address whether Mr. McCollum, a private defendant, may be classified as a state actor"), and thus the Tenth Circuit's holding is not determinative whether Ament's and Fisk's actions amounted to state action.  To evaluate whether Ament's and Fisk's actions satisfy this inquiry, the Court will apply, to the facts of this case, the four tests that the Supreme Court has articulated to assess whether private actors engaged in state action.

> **A.    AMENT AND FISK ARE NOT STATE ACTORS UNDER THE PUBLIC-FUNCTION TEST BECAUSE THE RIGHT TO REPOSSESS CHATTEL IS NOT EXCLUSIVELY RESERVED TO THE STATE.**

Ament's and Fisk's alleged actions at the Lincoln County Auto Brokers lot on June 15, 2007, as private actors,  do not satisfy the public-function test.  According to the Supreme Court, there is state action when a private party carries out a function that is "traditionally exclusively reserved to

the State." Jackson v. Metro. Edison Co., 419 U.S. at 352; Flagg Bros. v. Brooks, 436 U.S. 149, 157-58 (1978).  In New Mexico, the power to repossess chattel is not exclusively reserved to the State.  New Mexico Statutes Annotated Section 55-9-609 provides that a secured party may take possession of collateral "without judicial process, if it proceeds without breach of the peace." The State, therefore, has not exclusively reserved the power to repossess a vehicle to itself.  See Temptest Recovery Servs. v. Belone, 134 N.M. 133, 134 (2003)(stating that "[u]nder New Mexico law, repossession of goods upon default is permissible without the consent of the debtor. Unless otherwise agreed, a secured party has on default the right to take possession of the collateral."); see also Gibbs v. Titelman, 502 F.2d 1107 (3d Cir. 1974)(rejecting the plaintiff's public-function argument and holding that self-hel repossession of automobiles under Pennsylvania's uniform commercial code did not involve state action).  The Court finds that Ament and Fisk, in their individual capacities, were not state actors under the public-function test.

**B.      THE FACTS BEFORE THE COURT ARE NOT ROBUST ENOUGH TO DETERMINE WHETHER AMENT WAS A STATE ACTOR UNDER THE NEXUS TEST.**

Under the nexus test, state action is present if the state ordered the private conduct, or "exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." Blum v. Yaretsky, 457 U.S. at 993. Though Brophy and Christensen did not proffer an argument that the presence of the Ruidoso police during the repossession constituted significant encouragement by the State, the Court believes that under the circumstances of this case, the nature of the relationship of Ament, only as owner of Lincoln County Auto Brokers and not as a police officer, to the Village of Ruidoso police department could be an intimate enough relationship that his actions are attributable to the State. While the parties may be able to divide Ament in half for settlement purposes, the Court concludes

that he cannot be so easily divided for state-action purposes.  For example, Fisk, in his deposition, characterized Ament as "authoritative representation,"  Fisk Depo. at 59:8-10, and was unsure why Ament came to the Lincoln County Auto Brokers lot on the day of the incident, as Ament had instructed Fisk to call the police department when Fisk called Ament for "authoritative representation," see Fisk Depo. at 59:18-21 ("Q: What did Mr. Ament say? A: He said call the department. Q: And then why did he show up? A: Because he had been called. I don't know").

Moreover, circuits other than the Tenth Circuit have found a sufficiently close nexus where there is evidence of a customary or preexisting arrangement between the government and the private actor.  See Durante v. Fairlane Town Ctr., 201 Fed. Appx. 338, 344 (6th Cir. 2006)(granting defendants summary judgment on plaintiff's § 1983 claim because plaintiff failed to present evidence of a preexisting arrangement between defendants and the government); Hernandez v. Schwegmann Bros. Giant Supermarkets, Inc., 673 F.2d 771, 772 (5th Cir. 1982)(finding no evidence of an arrangement between store security and the police, and thus no state action).  The facts, as have been presented by the parties, however, are not robust enough for the Court to determine if there was a preexisting arrangement between the Ruidoso police and Ament in his capacity as owner of Lincoln County Auto Brokers.  See Gilmore v. City of Montgomery, 417 U.S. at 570 ("The record before us does not contain sufficient facts upon which to predicate legal judgments [on the presence of state action]").  More factual development is necessary to make an informed determination as a matter of law regarding the existence of a customary or preexisting relationship between Ament and the Village of Ruidoso police.  Accordingly, the Court cannot determine at this time whether Ament's actions could be classified as state action for the purposes of liability under § 1983 using the nexus test.

The facts suggest that Fisk's initial actions were the product of independent initiative.  As

Ament described in his deposition, Fisk was responsible for deciding whether to repossess a vehicle if a promissory note went unpaid. <u>See</u> Ament Depo. at 39:21-40:1. The facts suggest that it was upon Fisk's authority that the actions which led to the seizure of Brophy and Christensen's vehicle began. Fisk then involved Ament, when he contacted him on his private cellular telephone. It is unclear from the facts on the record, however, whether there was a preexisting arrangement between Fisk and Ament, in his police officer capacity, to support a finding of state action under the nexus test. The nexus test is satisfied if the state ordered the private conduct, or "exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." <u>Blum v. Yaretsky</u>, 457 U.S. at 993. Here, the facts are not robust enough to make a determination whether Ament, as a police officer, provided significant encouragement to Fisk. The Court, therefore, does not find Fisk to be a state actor under the nexus test.

### C.  AMENT AND FISK ARE NOT STATE ACTORS UNDER THE SYMBIOTIC-RELATIONSHIP TEST.

The actions of Ament and Fisk could be considered state action if there is a symbiotic relationship present between Ament and Fisk as private actors and the State, meaning that the actions of Ament and Fisk confer a variety of mutual benefits to each party. <u>See</u> <u>Gallagher v. Neil Young Freedom Concert</u>, 49 F.3d at 1451. There has been no evidence, however, that the Ruidoso Police Department or the state receive any benefit from the relationship that Ament, as a private individual, or Fisk have with Lincoln County Autobrokers, nor have Brophy and Christensen put forth an argument asserting otherwise. The Court, therefore, finds on the record before it that there is not state action under the symbiotic relationship test.

### D.   AMENT AND FISK ARE STATE ACTORS UNDER THE JOINT-ACTION TEST.

The test that most accurately demonstrates that Ament and Fisk's actions constituted state action is the joint-action test.  If Ament and Fisk willfully participated in joint activity with the State or its agents, they were acting under color of law for purposes of § 1983 liability.  See United States v. Price 383 U.S. at 794.  If, however, the Ruidoso police did nothing more than merely acquiesce to the requests of Fisk and Ament as owner, there may not be state action by Ament and Fisk, in their capacity as private persons.  See Flagg Bros., Inc. v. Brooks, 436 U.S. at 164.

When describing the incident that took place at the Lincoln County Auto Brokers lot on June 15, 2007, Christensen explained: "[Merrit] was trying to make me take all of my personal belongings and whatnots out of [the car] and return the car to him, to Eric [Ament]."  Christensen Depo. at 64:12-14.  Merrit also informed Brophy "that's Eric's car and you can't have it."  Deposition of Everett Brophy at 45:24 (taken June 24, 2009), filed July 31, 2009 (Doc. 68-2) ("Brophy Depo.").  Joint participation arises when the authorities agree to facilitate unconstitutional acts by a private party through affirmative action .  See Soldal v. Cook County, 506 U.S. 56, 60 n. 4 (1992).  The Court finds that a careful review of the facts supports a conclusion that both Fisk and Ament were willfully participating in joint action with agents of the State -- the Village of Ruidoso police.

Fisk's actions are analogous to the store security guard in Lusby v. T.G. & Y. Stores, Inc., 749 F.2d  at 1429, who reported a suspected shoplifter to the police and was found to be a state actor. The Tenth Circuit noted that the police officer who made the arrest did not make an independent investigation, but relied on the security guard's judgment.  Similarly, Ament describes that Fisk was responsible for determinations about repossession, and that it was Fisk who called

Ament because he wanted "authoritative representation" to deal with the situation with Christensen and Brophy.  See Fisk Depo. at 59:8-10.  Whether Fisk called Ament in his capacity as his boss or as a police officer, Ament relied on Fisk's judgment that confronting Christensen was appropriate as well as taking the additional step of calling the police department to send Merrit as well.

The Court finds that Ament's actions, in his role as owner of Lincoln County Auto Brokers, also constitute state action for the purpose of § 1983 liability.  Ament was the first to confront Christensen, before she expressed that she did not want to deal with him, and that she wanted help from another officer who was not owner of the business trying to repossess her vehicle.  Moreover, Ament admits that, "due to [his] relation" to the business, he was there "to make sure that everybody is okay."  See Ament Depo. at 58:20-22.  Ament stood by, and watched as Merrit informed Christensen and Brophy "that's Eric's car and you can't have it."  Brophy Depo. at 45:24.  It appears from these facts that Ament, as owner, was acting willfully and jointly with a State agent -- Merrit -- and therefore was engaged in state action.

The situation at the lot also resembles the facts in Coleman v. Turpen, 697 F.2d at 1341, where the Tenth Circuit applied the joint-action test.  The Tenth Circuit focused on the manner in which the alleged constitutional deprivation was carried out and determined that the wrecking company, which towed the plaintiff's truck and subsequently sold it, was a state actor because it had "jointly participated in seizing the truck by towing it away" and because the company's sale of the plaintiff's property was "an integral part of the deprivation." Id. at 1345.  Here, Ament and Fisk retained Christensen and Brophy's vehicle, even after Merrit had left the scene.  Moreover, Ament's actions permanently deprived Brophy and Christensen of their property when he loaned out their vehicle to his nanny, who wrecked it.  See Ament Depo. at 78:2-14.

As the Court addresses in its Memorandum Order and Opinion, filed November 20, 2009

(Doc. 98) deciding Ament's Motion for Summary Judgment, filed July 31, 2009 (Doc. 69), there remains a genuine issue of material fact whether Ament was acting solely in his capacity as an officer or as the owner of Lincoln County Auto Brokers, or both.  If a jury finds that Ament acted in whole or in part as owner, the Court finds that his actions in that capacity constituted state action. If the jury finds, however, that Ament acted solely in his capacity as a police officer, he may not be further held liable for violations of § 1983, not because there is an absence of state action, but because Ament as a police officer has settled.  Hence, whether Ament was acting as an owner or as a police officer, there was state action.  The Court notes, however, that any entered jury finding whether Ament was acting as a police officer or as an owner, will not absolve Fisk, for his actions alone are sufficient to demonstrate joint action with state agents, and may still be held liable.

Because the Court finds that Ament and Fisk were engaged in state action, the Court may now assess whether there remain any genuine issues of material fact with regards to Brophy and Christensen's claims of unlawful seizure and lack of due process, and determine whether they have shown that they are entitled to judgment as a matter of law.

## III.    BROPHY AND CHRISTENSEN ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR UNLAWFUL SEIZURE OF PERSON AND PROPERTY CLAIM.

Brophy and Christensen contend that Ament and Fisk acted in concert with Merrit to seize Christensen in her person and vehicle.  See Motion at 2.  Neither Fisk nor Ament deny that when Christensen arrived at the Lincoln County Auto Brokers' lot on June 15, 2007, an employee purposefully blocked the public access entrance with the intent to prevent Christensen leaving with her vehicle.  "[A] person has been seized within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave."  United States v. Mendenhall, 446 U.S. 544, 554 (1980).  Examples of

circumstances that might indicate a seizure of a person include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.  See Florida v. Royer, 460 U.S. 491, 497 (1983).  On June 15, 2007, Christensen was in her vehicle, was blocked in by a Lincoln County Auto Brokers' employee, and then confronted first by Fisk in the office, then by Ament in her car, and finally by Merrit.  While standing outside of her vehicle, Christensen was instructed to take all of her belongings out of the her vehicle and hand over the keys.  See Christensen Depo. at 63:8-64:16.  Christensen stated in her deposition that she felt compelled to comply because of the presence of officers.  See id. at 133:19-21 ("Like I had a cop standing in front of me with a gun that was already pissed off at me so I needed to give him the keys.").  Ament and Fisk have not contested that these actions occurred and have offered no evidence to support a conclusion that a reasonable person in Christensen's position would have felt free to leave the lot with her vehicle, see United States v. McGuire, 258 Fed. Appx. 749, 752 (6th Cir. 2007)(holding that, "it [was] unlikely that a reasonable person parked at the end of a private driveway at one o'clock in the morning would have felt free to leave the scene after a police car pulled to a stop so close that there's no way that that vehicle could leave"), or without her vehicle before first complying with the officers' requests to remove all of her belongings from the vehicle. The presence of two officers[10] using authoritative tones and instructing Christensen to comply with instructions to remove all of her belongings is enough for the Court to find that, at least for the time in which Christensen was ordered to remove her belongings, a reasonable person in similar

---

[10] The Court is not suggesting that Ament was acting solely in his capacity as a police officer, but rather notes that his presence, armed and in uniform, is a factor in evaluating whether Christensen was seized.

circumstances would not have felt free to leave. The Court notes that Ament and Fisk have raised no genuine issues of material fact to dispute the actions of Fisk, Ament, and Merrit. The Court, therefore, finds that Brophy and Christensen are entitled to judgment as a matter of law on their claim of unlawful seizure of Christensen's person.

"A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." United States v. Jacobsen, 466 U.S. 109, 113 (1984). State law governs repossession. See NMSA 1978, § 55-9-609. Under New Mexico law, Fisk and Ament, as secured parties, could repossess Christensen and Brophy's vehicle if they did not breach the peace. NMSA 1978, § 55-9-609 ("A secured party may [take possession of collateral] (1) pursuant to judicial process; or (2) without judicial process, if it proceeds without breach of the peace.") Ament admitted that he understands what a peaceful repossession is and that what occurred on June 15, 2007 was not a peaceful repossession. See Ament Depo. at 49:9-20. Christensen became upset as Ament and then Merrit confronted her to remove her and take the vehicle. The Court finds that Ament and Fisk have presented no evidence to show that there is a genuine issue of material fact as to the seizure of Brophy and Christensen's vehicle, and that Brophy and Christensen are entitled to judgment as a matter of law. The Court therefore grants the Brophy and Christensen's motion for summary judgment as to the seizure of their vehicle.

## IV.   THERE EXIST GENUINE ISSUES OF MATERIAL FACT WHETHER BROPHY AND CHRISTENSEN WERE GIVEN NOTICE AND AN OPPORTUNITY TO BE HEARD BEFORE THEIR VEHICLE WAS SEIZED.

Brophy and Christensen contend that, at the time their vehicle was seized, the in-house promissory note was not in default,[11] and no notice had been given or process obtained, either of the

---

[11] Under the terms of the in-house promissory note, $600.00 was due to Lincoln County Auto Brokers on June 15, 2007, the same day as the repossession.

need for payment or the subsequent offer of sale of the vehicle after it had been seized.  Ament and Fisk contend that Brophy and Christensen were given notice, including several calls made by Fisk that payment was required.  Further, Lincoln County Auto Brokers sent a notice via certified mail that it would be selling Brophy and Christensen's vehicle.[12]

For the Court to grant summary judgment, there must be no genuine issues of material fact in dispute.  The Court finds, however, that Ament and Fisk have established that there are genuine issues of fact which affect whether Brophy and Christensen received proper notice and an opportunity to be heard before their vehicle was seized.  See Fuentes v. Shevin, 407 U.S. at 80-82.  Taking the evidence in the light most favorable to Ament and Fisk, as the non-moving parties, the calls that Fisk made and even the alleged threatening call that Ament made, could be enough for a reasonable fact-finder to determine that Brophy and Christensen were put on notice and given a chance to explain that they were bringing in their outstanding payment, before the incident on June 15, 2007.  Moreover, they were on notice that, if they subsequently brought their account up to date, they could reclaim their vehicle, even as soon as the same afternoon as the morning seizure on June 15, 2007.  See Brophy Depo. at 66:12-19.  The Court, therefore, denies the motion for summary judgment on the due-process claim.

**IT IS ORDERED** that Plaintiffs' Motion for Partial Summary Judgment is granted in part and denied in part.  As to the claims asserted against Fisk, the motion is granted on the seizure claims and denied on the due process claim.  To the extent that a jury finds that Ament acted in his capacity as owner of Lincoln County Auto Brokers, the Plaintiffs' motion for summary judgment is granted on the seizure claims and denied on the due process claim.

_____

[12] Brophy and Christensen contend that they did not receive this letter because it contained the wrong address.

UNITED STATES DISTRICT JUDGE

*Counsel:*

John R. Beauvais
J. Robert Beauvais, P.A.
Ruidoso, New Mexico

    *Attorneys for Plaintiffs*

Michael Danoff
Michael Danoff & Associates, P.C.
Albuquerque, New Mexico

    *Attorneys for Defendants David Fisk and Lincoln County Auto Brokers, LLC*

Richard E. Olsen
Hinkle, Hensley, Shanor & Martin, LLP
Roswell, New Mexico

    *Attorneys for Defendants The Village of Ruidoso ex rel Ruidoso Police Department and*
       *Ray Merrit*

Richard E. Olsen
Hinkle, Hensley, Shanor & Martin, LLP
Roswell, New Mexico

-- and --

Michael Danoff
Michael Danoff & Associates, P.C.
Albuquerque, New Mexico

    *Attorneys for Defendant Eric Ament*