## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

EVERETT BROPHY AND
SHAYLA CHRISTENSEN,

       Plaintiffs,

vs.                                                                          No. CIV 07-0751 JB/KBM

ERIC AMENT, DAVID FISK, AND JOHN
DOE, Individually, as members of
Lincoln County Auto Brokers, LLC., and
as Ruidoso Police Officers, LINCOLN
COUNTY AUTOBROKERS, LLC.,
RAY MERRIT, and THE VILLAGE OF
RUIDOSO ex rel RUIDOSO POLICE
DEPARTMENT, and CITY BANK, TEXAS,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants Eric Ament and David Fisk's

Motion for Summary Judgment, filed July 31, 2009 (Doc. 71).  The Court held a hearing on

November 2, 2009.  The primary issues are (i) whether Defendant Eric Ament and Defendant David

Fisk may be held individually liable for violations of Plaintiffs Everett Brophy and Shayla

Christensen's constitutional rights or if they are protected by a corporate shield; and (ii) whether

Ament and Fisk are entitled to summary judgment on Brophy and Christensen's claim for conspiracy

under 42 U.S.C. § 1985.  Because Ament and Fisk are not shielded from liability for constitutional

torts committed by individuals, the Court will deny the motion for summary judgment on the § 1983

claims.  The Court, however, concluding that there are no genuine issues of material fact which

would entitle Brophy and Christensen to relief under § 1985, will grant Ament and Fisk's motion

for summary judgment on that claim.

## FACTUAL BACKGROUND

Lincoln County Auto Brokers, LLC is a New Mexico limited liability corporation that operates in Ruidoso, New Mexico.  See Amended Complaint ¶ 16, at 3, filed July 18, 2008 (Doc. 30).  Ament is the owner of Lincoln County Auto Brokers, which sells automobiles.  See Amended Complaint ¶ 13, at 3; Deposition of Eric Ament at 21:2-7 (taken April 1, 2009), filed July 18, 2009 (Doc. 67-2 through Doc. 67-9)("Ament Depo.").  Ament and his wife own the property where Lincoln County Auto Brokers is situated.  See Ament Depo. at 15:24-16:2, at 2 (Doc. 67-2).

Ament states he is trying to involve himself in the company more each day, see Ament Depo. at 43:19-20, but  Fisk  was a manager and employee at Lincoln County Auto Brokers at all times relevant to this case and handled many of the daily responsibilities of running the company.  See Affidavit of David Fisk ¶ 3, filed July 31, 2009 (Doc. 72-2).  Fisk has no ownership interest in Lincoln County Auto Brokers.  See id.  Fisk had authority to enter into contracts on behalf of Lincoln County Auto Brokers.  See Ament Depo. at 27:16-19.  Ament states that understanding the proper procedure regarding notice before repossessions was Fisk's responsibility.  See Ament Depo. at 50:23-51:3.

This case arises out of an incident on June 15, 2007, at the Lincoln County Auto Brokers' lot involving Christensen and the Defendants in which Lincoln County Auto Brokers, Ament, Fisk, and Defendant Ray Merrit, a Ruidoso police officer, repossessed Brophy's and Christensen's vehicle.  Facts in more detail are set forth in the Court's earlier Memorandum Opinion and Order, filed November 20, 2009 (Doc. 98).  When Christensen arrived on the lot to make a payment on June 15, 2007, an employee blocked the only public access entrance, preventing Christensen from leaving with her vehicle.  See Deposition of Shayla Christensen at 53:18-54:7 (taken June 24, 2009),

filed July 18, 2009 (Doc. 67-12).  When the problem arose regarding Brophy and Christensen's vehicle, Fisk, an employee of Ament's, called Ament on his private cellular telephone.  See Ament Depo. at 47:5-11, at 1 (Doc. 67-6); id. at 54:7-11, at 2; Fisk Depo. at 68:2-14, at 1 (Doc. 67-15).  Ament arrived and confronted Christensen, who responded that she did not want to deal with him because he owned the business.  See Ament Depo. at 66:15-19.  When he arrived at Lincoln County Auto Brokers on June 15, 2007, Ament knew the employees of Lincoln County Auto Brokers had blocked off the entrance to the lot by using an automobile in the dealership's inventory.  See Ament Depo. at 64:10-65:8, at 1 (Doc. 67-8).

Ament classified the events of June 15, 2007 as a repossession.  See Ament Depo. at 69: 6-15, at 2; Fisk Depo. at 62: 7-20, at 3.  Ament admits that the repossession of Brophy's and Christensen's vehicle was not a peaceful repossession.  See Ament Depo. at 49:19-20, at 1 (Doc. 67-6)(explaining that his understanding of a peaceful repossession is that, "when things start getting out of control, the car goes with -- everything ceases, the car moves on with whoever the owner or whoever the car's -- registered owner of the car is."); id. at 49:9-12.  He admits that what he understood a peaceful repossession to be is not what happened on June 15, 2007.  See id. at 49:19-20; Fisk Depo. at 62:7-20, at 3.

When Merrit arrived, he confronted Christensen, and while standing behind Christensen and her vehicle, Ament heard Merrit tell Christensen that Lincoln County Auto Brokers wanted their car, and that she was going to have to leave it, or words to the effect.  See Ament Depo. at 56: 22-25; Christensen Depo. at 63:12-24; id. at 64:6-16; id. at 66:3-17; id. at 133:9-21.  Merrit instructed Christensen to remove her personal belongings from the vehicle so that the car could be returned to Ament.  See Christensen Depo. at 64:12-14.  Merrit requested that Christensen surrender the vehicle

and hand over the keys.  See Christensen Depo. at 133:9-21.  Ament and Fisk contend that Christensen gave the keys to Merrit and voluntarily left.  Brophy and Christensen deny that Christensen acted voluntarily and, instead, assert that Christensen felt compelled to give the keys because Merrit was a police officer.  See id. at 133:19-21.  Fisk contends that Merrit made the decision that the vehicle was not leaving the lot, though he did not specifically hear him say that Christensen could not take the car.  See Fisk Depo. at 62:9-12.

## PROCEDURAL HISTORY

The Plaintiffs have filed this case against, among others, Ament, Fisk, and Lincoln County Auto Brokers.  See Amended Complaint, filed July 18, 2009 (Doc. 30).  The Court previously bifurcated the proceedings because of an arbitration provision that the retail-purchase agreement contained.  The arbitration proceeding will decide the civil-rights claim against Lincoln County Auto Brokers, because Lincoln County Auto Brokers is a party to the arbitration agreement.  Defendants Village of Ruidoso, Merrit and Ament, as Ruidoso Police Department Officers, in their official capacities, resolved the claims against them by settlement of those claims.

The Court granted summary judgment to Brophy and Christensen on their claims of unlawful seizure of person and property asserted against Ament and Fisk, in their individual capacities.[1] The Court denied their motion for summary judgment on their due-process claim.  See Memorandum Opinion and Order, dated November 20, 2009 (Doc. 98).  The parties filed a pretrial order on November 5, 2009.  According to the pretrial order, the claims upon which relief is sought are constitutional violations pursuant to 42 U.S.C. § 1983 and § 1985.  Pretrial Order at 3, filed

---

[1] Summary judgment was granted on the seizure claims asserted against Ament contingent upon a jury finding that Ament acted in whole or in part as the owner of Lincoln County Auto Brokers, and not solely as a police officer.

November 5, 2009 (Doc. 94).[2]

      Ament and Fisk now move the Court for summary judgment under NMRA Rule 1-056(C).[3] See Memorandum of Law in Support of Defendants Eric Ament and David Fisk's Motion for Summary Judgment at 2, filed July 31, 2009 (Doc. 72)("Defs. Memo."). Ament and Fisk assert that they never acted in their individual capacities, but rather were always acting as representatives of the corporate entity, Lincoln County Auto Brokers, LLC. See id. Ament and Fisk assert that Ament acted as principal for Lincoln County Auto Brokers when he tried to collect money which Brophy and Christensen owed on the vehicle they purchased. See Defs. Memo. at 5. Further, they assert that Fisk's involvement was as a sales representative and agent of Lincoln County Auto Brokers. See id. They contend that a corporate shield protects both. See id.

─────────────────

[2] At the pretrial conference held on November 6, 2009, J. Robert Beauvais, Brophy and Christensen's attorney, stated that state claims still remain. See Transcript of Pretrial Conference Hearing at 26:11-27:10 (taken November 6, 2009)(Beauvais, Court). Given that the Pretrial Order was filed with the Court the day before Mr. Beauvais made these statements, that document controls. The Tenth Circuit has stated that, "[w]hen an issue is set forth in the pretrial order, it is not necessary to amend previously filed pleadings," because "the pretrial order is the controlling document for trial." Expertise Inc. v. Aetna Fin. Co., 810 F.2d 968, 973 (10th Cir. 1987); Fed. R. Civ. P. 16(e). The Tenth Circuit has held that "claims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint and, conversely, the inclusion of a claim in the pretrial order is deemed to amend any previous pleadings which did not include that claim." Wilson v. Muckala, 303 F.3d 1207, 1215 (10th Cir. 2002). The pretrial order the parties filed in this case, therefore, supercedes all prior pleadings, including the Complaint. See id. (citing C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil § 1522 (2d ed. 1990)). The remaining claims before the Court, therefore, are as stated in the pretrial order: "damages for constitutional violation and compensatory damages pursuant to 42 U.S.C. § 1983 & 1985; attorneys fees and costs." Pretrial Order at 3. As Ament and Fisk have moved for summary judgment on all claims brought against them as individuals, the Court will address the § 1983 and § 1985 claims, but the motion as to any state claims is moot, because the claims are no longer in this case.

[3] The Court notes that, though Ament and Fisk move for summary judgment pursuant to New Mexico law, the proper standard of review and the standard upon which the Court will decide this motion, is rule 56 of the Federal Rules of Civil Procedure.

Brophy and Christensen filed a response on August 21, 2009.  See Plaintiffs Memorandum Brief in Support of Its Response to Defendants Eric Ament and David Fisk's Motion for Summary Judgment (Doc. 76)("Pl. Response").  Brophy and Christensen appear to have misunderstood Ament and Fisk's argument asserting the protections of the corporate-shield doctrine, as their response argues that state officials may be held individually liable, and because Ament and Fisk were acting under color of state law, claims may be asserted against them.  See Pl. Response at 6-7.  A conclusory statement addressed the corporate shield argument: "Defendants argument in support of summary judgment in [sic] entirely dependent on the legal reliance to New Mexico state law regarding agency and corporation.  There is no relevance."  Pl. Response at 6.  The Court disagrees with Brophy's and Christensen's conclusory statement, and finds a need to address corporate agency law and the potential for protection via the corporate-shield doctrine needs to be addressed and the relevant law.

Ament's and Fisk's Reply does not further their corporate-shield argument, but rather asserts that Brophy and Christensen cannot show that Ament acted in a capacity other than that of police officer, and argue that Brophy and Christensen cannot establish state action.  See Defendants' Reply to Plaintiff's Response to Defendants Eric Ament and David Fisk's Motion for Summary Judgment at 4, 7-8, filed September 8, 2009 (Doc. 81).  The Court decided that there are genuine issues of material fact whether Ament was acting as police officer and/or owner of Lincoln County Auto Brokers, and denied Ament's motion for summary judgment on that grounds.  See Memorandum Opinion and Order, filed November 20, 2009 (Doc. 99).

The Court held a pretrial conference with the parties on November 6, 2009.  The Court stated it would deny the motion for summary judgment because individuals can be held for tortious acts

individually and not be shielded by the limited liability corporate shield, particularly for claims under § 1983.  See Transcript of Pretrial Conference Hearing at 11:14-20 (taken November 6, 2009)(Court).[4]  Ament and Fisk have moved for summary judgment on all claims.  Pursuant to the pretrial order, the remaining claims are violations of § 1983 and § 1985.  Though the Court addressed the § 1983 claims in the pretrial conference, and will still deny Ament's and Fisk's motion for summary judgment on those claims, the Court finds, upon further review of the factual record, that summary judgment is appropriate on Brophy's and Christensen's § 1985 claims.  The Court, therefore, revises in part what it stated at the pretrial conference, and will deny the motion in part and grant it in part.

## THE STANDARD AND LAW FOR DECIDING MOTIONS FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)(internal quotation marks omitted).  Once the movant meets his or her burden, the burden shifts to the non-moving party to set forth specific facts showing there is a genuine issue for trial.  See Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256 (1986).

When considering a motion for summary judgment, the court must consider all of the evidence in the light most favorable to the non-moving party.  See Jones v. Unisys Corp., 54 F.3d

_____

[4] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

624, 628 (10th Cir. 1995).  Rule 56 provides that "an opposing party may not rely merely on allegations or denials in its own pleadings; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).

The mere existence of a scintilla of evidence will not avoid summary judgment.  See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993).  There must be sufficient evidence on which the fact-finder could reasonably find for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### NEW MEXICO LAW REGARDING LIABILITY FOR MEMBERS OF A LIMITED LIABILITY COMPANY

Members of a limited liability company enjoy a corporate-like liability shield, but the protection is not all-encompassing.  See Brophy v. Ament, No. CIV. 07-751, 2008 U.S. Dist. LEXIS 95879, at *16 (July 9, 2008)(Browning, J.)(citing C. Bishop & D. Kleinberger, Limited Liability Companies: Tax and Business Law ¶ 6.01 (2008)).  The shield protects only from liability arising from an individual's status as a member of a limited liability company and generally does not extend to shield liability for (i) false or defective formation of the limited liability company; (ii) wrongful conduct by a member; (iii) abuse of the shield; and (iv) capital-related obligations imposed by enabling statutes.  See Brophy v. Ament, 2008 U.S. Dist. LEXIS 95879, at *16 (citing C. Bishop & D. Kleinberger, supra, ¶ 6.01.  "[T]he shield provides no protection when a member engages in actionable conduct.  Liability in those circumstances can arise under both common law and statutory rule, and the fact that a member's conduct is in connection with, or even in the service of, a limited

liability company will not negate liability."  C. Bishop & D. Kleinberger, supra, ¶ 6.04.

The New Mexico Limited Liability Company Act, NMSA 1978, §§ 53-19-2 to 53-19-13, governs limited liability companies formed in New Mexico.  The Limited Liability Company Act states the following regarding the liability of its members to third parties:

> Except as otherwise provided in the Limited Liability Company Act, the debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company.  No member or manager of a limited liability company and no other person with authority pursuant to the Limited Liability Company Act to wind up the business or affairs of the limited liability company following its dissolution, shall be obligated personally for any debt, obligation or liability of the limited liability company solely by reason of being a member or manager of the limited liability company or having authority pursuant to the Limited Liability Company Act to wind up the company's business and affairs following its dissolution.  A person may be liable for any act or omission performed in his capacity as a manager of a limited liability company if there is a basis for liability.  Nothing in this section shall be construed to immunize any person from liability for the consequences of his own acts or omissions for which he otherwise may be liable.

N.M.S.A. 1978, § 53-19-13.

The Supreme Court of New Mexico has stated that "officers or employees of corporations can be held personally liable when they commit intentional torts."  Bourgeous v. Horizon Healthcare Corp., 117 N.M. 434, 437, 872 P.2d 852, 855 (1994).  The New Mexico Court of Appeals has consistently found that individuals can be held liable if those individuals participate in the commencement of tortious acts.  See Kaveny v. MDA Enterprises, Inc., 138 N.M. 432, 436, 120 P.3d 854, 858 (Ct. App. 2005)( "Officers of corporations can be held personally liable when they commit intentional torts."); Bogle v. Summit Investment Co., LLC, 137 N.M. 80, 88, 107 P.3d 520, 528 (Ct. App. 2005)("[U]nder New Mexico's Limited Liability Company Act . . . and supporting case law, an agent of a corporation may be held liable for the consequences of his own acts or omissions, including tortious acts."); Stinson v. Berry, 123 N.M. 482, 487, 943 P.2d 129, 134 (Ct.

App. 1997)("[I]f an officer or director directs or actively participates in the commission of the

tortious act of the corporation, he will be liable"); Kreischer v. Armijo, 118 N.M. 671, 673, 884 P.2d

827, 829 (Ct. App. 1994)("We recognize that an agent may be held individually liable for his own

tortious acts, whether or not he was acting for a disclosed principal.").

In Lobato v. Pay Less Drug Stores. Inc., 261 F.2d 406 (10th Cir. 1958), the United States

Court of Appeals for the Tenth Circuit stated:

> It is the general rule that if an officer or agent of a corporation directs or participates
> actively in the commission of a tortious act or an act from which a tort necessarily
> follows or may reasonably be expected to follow, he is personally liable to a third
> person for injuries proximately resulting therefrom.  But merely being an officer or
> agent of a corporation does not render one personally liable for a tortious act of the
> corporation.  Specific direction or sanction of, or active participation or cooperation
> in, a positively wrongful act of commission or omission which operates to the injury
> or prejudice of the complaining party is necessary to generate individual liability in
> damages of an officer or agent of a corporation for the tort of the corporation.

Id. at 408-409.

## LAW REGARDING § 1985 CLAIMS

42 U.S.C. § 1985 pertains to the prohibition of conspiracy which interfere with civil rights.

See 42 U.S.C. § 1985.[5] The Supreme Court recognizes "five broad classes of conspiratorial activity"

---

[5]§ 1985. Conspiracy to interfere with civil rights

(1) Preventing officer from performing duties

If two or more persons in any State or Territory conspire to prevent, by force,
intimidation, or threat, any person from accepting or holding any office, trust, or
place of confidence under the United States, or from discharging any duties thereof;
or to induce by like means any officer of the United States to leave any State, district,
or place, where his duties as an officer are required to be performed, or to injure him
in his person or property on account of his lawful discharge of the duties of his
office, or while engaged in the lawful discharge thereof, or to injure his property so
as to molest, interrupt, hinder, or impede him in the discharge of his official duties;

that § 1985 prohibits.  See Kush v. Rutledge, 460 U.S. 719, 724 (1983).  "Three of the five broad

categories . . . relate to institutions and processes of the Federal Government."  Id.  The fourth and

fifth classes of § 1985 claims apply to conspiracies to "obstruct the course of justice in state courts"

---

(2) Obstructing justice; intimidating party, witness, or juror

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

(3) Depriving persons of rights or privileges

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

-11-

and to "go in disguise on the highway or in the premises of another." Kush v. Rutledge, 460 U.S. at 724 (internal quotation marks omitted). Both of these categories require an "intent to deprive their victims of the equal protections of the laws," id., which means that there must be some "racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspiratorial action," id. at 726 (internal quotation marks omitted). See Campbell v. Amax Coal Co., 610 F.2d 701, 702 (10th Cir. 1979)("[I]n the absence of allegations of class based or racial discriminatory animus, the complaint fails to state a claim under § 1985.").

To succeed on a § 1985 claim, a conspiracy must be proven. See Dixon v. City of Lawton, Okla., 898 F.2d 1443, 1447 (10th Cir. 1990). To state a valid claim for conspiracy, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants." Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1998)(discussing conspiracy under § 1983). "[M]ere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action." Sooner Prods. Co. v. McBride, 708 F.2d 510, 512 (10th Cir. 1983)(discussing conspiracy under § 1983).

The Tenth Circuit has held that it is error to "precondition consideration of a plaintiff's §1985(3) claim upon the finding of § 1983 liability." Dixon v. City of Lawton, Okla., 898 F.2d at 1447 (10th Cir. 1990). "Although neither §1983 nor §1985(3) create any substantive rights, a §1983 claim generally describes a substantive violation of a right secured by the Constitution or laws, whereas a § 1985(3) claim generally describes a conspiracy of two or more persons for the purpose of depriving of another of equal protection of the laws or equal privileges and immunities under the laws." Id.

-12-

Section 1985(2) has two parts: the first part pertains to the administration of justice in the federal judicial system, and the second part relates to "conspiracies to obstruct the course of justice in state courts."   Kush v. Rutledge, 460 U.S. at 725.   Thus, the second part of § 1985(2) encompasses "underlying activity that is not institutionally linked to federal interests and that is usually of primary state concern."   Kush v. Rutledge, 460 U.S. at 725.   The second part of § 1985(2) has been construed to mean that it prohibits any conspiracy to obstruct a state judicial proceeding with the intent to deprive another of equal protection of the laws.   See Kush v. Rutledge, 460 U.S. at 725.   A further distinction between the two components of § 1985(2) is that a violation of the second part requires a showing that the conspirators intended to deprive the injured party of the equal protection of the laws.   See Kush v. Rutledge, 460 U.S. at 725; Stern v. United States Gypsum, Inc., 547 F.2d 1329, 1341 (7th Cir. 1977).   No such animus requirement applies to the first part of § 1985(2).   See Kush v. Rutledge, 460 U.S. at 726.

To state a claim under § 1985(3), a plaintiff must show: (i) a conspiracy, motivated by racially-discriminatory animus; (ii) to deprive the plaintiff of equal protection or equal protections of the laws; (iii) an act in furtherance of the conspiracy; and (iv) an injury or deprivation resulting therefrom.   See Paris v. Sw. Bell Tel. Co., 94 Fed. Appx. 810, 815 (10th Cir. 2004); Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1993).   Conclusory allegations that the defendants acted in concert or conspired without specific factual allegations to support such assertions are insufficient to state a claim under § 1985(3).   See Merritt v. Hawk, 153 F. Supp. 2d 1216, 1225 (D. Colo. 2001).

The Tenth Circuit has stated that § 1985(3) was intended "to provide redress for victims of conspiracies impelled by a commingling of racial and political motives."   Brown v. Reardon, 770 F.2d 896, 907 (10th Cir. 1985).   "[I]n the absence of allegations of class based or racial

discriminatory animus, the complaint fails to state a claim under § 1985." Campbell v. Amax Coal Co., 610 F.2d 701, 702 (10th Cir. 1979).  The Tenth Circuit has consistently dismissed § 1985(3) claims devoid of racial, discriminatory animus.  For example, in Paris v. Southwestern Bell Telephone Co., the Tenth Circuit held that the plaintiff's hostile-work-environment claim failed because she did not show racial discriminatory animus on the part of the alleged conspirators.  See 94 Fed. Appx. at 815.

## ANALYSIS

Ament and Fisk argue that they are entitled to summary judgment because the corporate-shield doctrine protects them from individual liability.  They argue that they acted as owner and employee respectively for Lincoln County Auto Brokers, LLC.[6] As the Court previously found in its decision on the Defendants' motion to dismiss, Ament's and Fisk's possible tortious conduct exposes them to personal liability.  See Brophy v. Ament, 2008 U.S. Dist. LEXIS 95879, at *29. The Court has already found that Ament and Fisk are liable for unlawful seizure of Brophy's and Christensen's vehicle and Christensen's person.  Ament and Fisk filed this motion for summary judgment at the same time that Brophy and Christensen filed their motion for summary judgment. Though the Court has granted summary judgment on the unlawful seizure claims brought against Ament and Fisk in their individual capacities, in the spirit of completeness and fairness, the Court

---

[6] The Court notes that Ament and Fisk raised this identical argument in their motion to dismiss, see Memorandum in Support of Motion to Dismiss at 2, filed September 6, 2007 (Doc. 8), and the Court rejected the argument, noting that "the Court [could] reasonably infer from the allegations that, for some activities, Ament and Fisk may have been directly involved in various acts, including intentional tortious acts, and that some of those acts exceeded the scope of their employment, thus allowing them to be held personally liable,"  Brophy v. Ament, 2008 U.S. Dist. LEXIS 95879, at *26.  The Court found that "regardless of whether Ament and Fisk were or were not within the scope of their position within the LLC, their possible tortious conduct makes them personally liable."  Id., at *29.

-14-

will address Ament's and Fisk's motion for summary judgment with respect to both the seizure and the due-process claims.

## I.   42 U.S.C. § 1983 ACTIONS ARE TREATED AS CONSTITUTIONAL TORTS.

A limited-liability-company shield does not protect Ament and Fisk if they engaged in individual tortious conduct.  See Lobato v. Pay Less Drug Stores, Inc., 261 F.2d at 408-09 ("[I]f an officer or agent . . . directs or participates actively in the commission of a tortious act or an act from which a tort necessarily follows . . . he is personally liable."); Bourgeous v. Horizon Healthcare Corp., 117 N.M. at 437, 872 P.2d at 855 ("[O]fficers and employees . . . can be held personally liable when they commit intentional torts.").  Brophy and Christensen have asserted constitutional claims for unlawful seizure and due process under 42 U.S.C. § 1983.  The Supreme Court of the United States has found that "Section 1983 'creates a species of tort liability that on its face admits of no immunities.'"  Wyatt v. Cole, 504 U.S. 158, 164 (1992)(quoting Imbler v. Pachtman, 424 U.S. 409, 417 (1976)).

The Supreme Court instructs that § 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions."  Malley v. Briggs, 475 U.S. 335, 345 (1986)(quoting Monroe v. Pape, 365 U.S. 167, 187 (1961)); Medina v. Pacheco, No. 97-2013, 1998 U.S. App. LEXIS 22533, at *16 (10th Cir. 1993)(table)("§ 1983 claims are analogous to tort, or personal injury, actions."); Stringer v. Dilger, 313 F.2d 536, 540 (10th Cir. 1963).[7]  Thus, if Ament and Fisk personally and individually engaged in violations of Brophy and

---

[7] Claims for damages brought against state actors for violating an individual's federal constitutional rights are often referred to as "constitutional torts."  Williams v. Berney, 519 F.3d 1216, 1220-21 (10th Cir. 2008); J. Park, The Constitutional Tort Action as Individual Remedy, 38 Harv. C.R.-C.L. L. Rev. 393 n.1 (2003).

Christensen's constitutional rights, they may be held liable.

## II.   AMENT AND FISK ARE NOT SHIELDED FROM LIABILITY FOR THEIR UNLAWFUL SEIZURE OF BROPHY'S AND CHRISTENSEN'S VEHICLE AND CHRISTENSEN'S PERSON.

The Supreme Court has stated that "[v]iolation of the Fourth Amendment requires an intentional acquisition of physical control." Brower v. County of Inyo, 489 U.S. 593, 596 (1989). The Supreme Court views willfulness as an implicit requirement of the word seizure, "which can hardly be applied to an unknowing act." Id. On June 15, 2007, Ament and Fisk engaged individually in intentional acquisition of physical control. According to Ament, Fisk decided when a vehicle should be repossessed in response to non-payment on a promissory note, and it was Fisk's decision to engage in the repossession of Brophy's and Christensen's vehicle. See Ament Depo. at 39:21-40:1. Fisk also called Ament and was provided with police assistance to engage in an unlawful seizure. That Fisk's conduct is in connection with, or even in the service of, Lincoln County Auto Brokers, a limited liability company, does not negate his liability. See Kleinberger, ¶ 6.04. Ament also actively engaged in the seizure of Brophy's and Christensen's vehicle, and of Christensen's person. Ament admitted that he understands what a peaceful repossession is and that what occurred on June 15, 2007 was not a peaceful repossession. See Ament Depo. at 49:9-20. He confronted Christensen and later stood by while Merrit, an officer with the Ruidoso police, instructed Christensen to give the car to Ament.

Grafting the background of tort liability onto the seizure violation, the Court finds that Ament and Fisk are not shielded from liability for their intentional constitutionally tortious conduct. Their actions evidenced intentional acquisition of control, and the protections afforded to members of a limited liability company do not apply to such intentional torts committed by individuals such

-16-

as Ament and Fisk.  The Court therefore denies Ament's and Fisk's motion for summary judgment with respect to the seizure claims.

### III.   AMENT AND FISK ARE NOT SHIELDED FROM LIABILITY FROM BROPHY'S AND CHRISTENSEN'S DUE-PROCESS CLAIM.

Brophy and Christensen have also asserted a procedural due-process claim against Ament and Fisk.  Courts have also treated procedural due process claims as constitutional torts.  See Dill v. City of Edmond, 155 F.3d 1193, 1207 (10th Cir. 1998)(holding that an inconvenient change in the plaintiff's work schedule did not trigger procedural due process claims because, "[w]hile the rescheduling may have inconvenienced him and defeated an expectation interest, such is not the stuff of constitutional torts.")(quoting Altman v. Hurst, 734 F.2d 1240, 1242 (7th Cir. 1984)).

Private individuals acting under color of state law may be held liable for procedural due-process violations under 42 U.S.C. § 1983.  See Lugar v. Edmondson Oil Co., 457 U.S. 922, 932-22 (1982); Woodring v. Jennings State Bank, 603 F. Supp. 1060, 1066 (D. Neb. 1985).  Ament and Fisk, as principal and agent of Lincoln County Auto Brokers, may be held liable for the consequences of their own acts or omissions, including tortious acts.  See Bogle v. Summit Investment Co., LLC, 137 N.M. 80, 88, 107 P.3d 520, 528 (Ct. App. 2005).

There remain genuine issues of material fact whether Brophy and Christensen were afforded proper notice or opportunity to be heard before the seizure of their vehicle.  If a reasonable trier of fact finds, however, that Ament and Fisk deprived Brophy and Christensen of notice or an opportunity to be heard, they may be liable for constitutionally tortious conduct in depriving Brophy and Christensen of their property without due process.  The limited liability company shield would thus not protect Ament and Fisk, and they would be liable for the consequences of their actions.  The Court, therefore, denies Ament's and Fisk's motion for summary judgment on the due-process claim.

## IV.     AMENT AND FISK ARE ENTITLED TO SUMMARY JUDGMENT ON BROPHY AND CHRISTENSEN'S § 1985 CONSPIRACY CLAIM.

Brophy and Christensen have also brought a claim under 42 U.S.C. § 1985(2) and (3), alleging that Defendants conspired to seize their property.  Section 1985 pertains to the prohibition of conspiracies that interfere with civil rights.  See 42 U.S.C. § 1985.  To state a claim under § 1985(3), a plaintiff must show: (i) a conspiracy, motivated by racially-discriminatory animus; (ii) to deprive the plaintiff of equal protection or equal protections of the laws; (iii) an act in furtherance of the conspiracy; and (iv) an injury or deprivation resulting therefrom.  See Paris v. Sw. Bell Tel. Co., 94 Fed. Appx. 810, 815 (10th Cir. 2004); Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1993).  To state a claim under § 1985(2), a plaintiff must show that a defendant conspired with the intent to deprive another of equal protection of the law.  See Kush v. Rutledge, 460 U.S. at 725.

Brophy and Christensen contend that the Defendants conspired to seize their property.  To state a valid claim for conspiracy, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants."  Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 533 (10th Cir.1998).  The Court, in its opinion addressing state action, found that the facts are sufficient to demonstrate joint action between Fisk, Ament, and the Ruidoso police.  See Memorandum Opinion and Order, filed November 20, 2009 (Doc. 98).  Concerted action alone, however, is not enough to sustain a claim under § 1985(2) or (3).  Brophy and Christensen must also show discriminatory animus behind the conspiracy.  They have failed to do so.  Brophy and Christensen have not alleged that Ament or Fisk had any discriminatory animus against Christensen when they repossessed her vehicle on June 15, 2007.  Viewing the facts in the light most favorable to the non-moving party, here Brophy and Christensen, there are no facts supporting an allegation of discriminatory animus by Fisk and Ament.  See Campbell v. Amax Coal Co., 610 F.2d at 702 ("[I]n

the absence of allegations of class based or racial discriminatory animus, the complaint fails to state

a claim under § 1985."). The Court will, therefore, grant Ament's and Fisk's motion for summary

judgment on the § 1985 claim.

      **IT IS ORDERED** that Defendants Eric Ament and David Fisk's Motion for Summary

Judgment is denied in part and granted in part. The motion is denied with regards to the claims

under 42 U.S.C. § 1983. The claims under 42 U.S.C. § 1985 are dismissed.


                                                          _____
                                                     UNITED STATES DISTRICT JUDGE

Counsel:

John R. Beauvais
J. Robert Beauvais, P.A.
Ruidoso, New Mexico

     *Attorneys for Plaintiffs*

Michael Danoff
Michael Danoff & Associates, P.C.
Albuquerque, New Mexico

     *Attorneys for Defendants David Fisk and Lincoln County Auto Brokers, LLC*

Richard E. Olsen
Hinkle, Hensley, Shanor & Martin, LLP
Roswell, New Mexico

     *Attorneys for Defendants The Village of Ruidoso ex rel Ruidoso Police Department and*
       *Ray Merrit*

Richard E. Olsen
Hinkle, Hensley, Shanor & Martin, LLP

Roswell, New Mexico

-- and --

Michael Danoff
Michael Danoff & Associates, P.C.
Albuquerque, New Mexico

*Attorneys for Defendant Eric Ament*